389 So.2d 73 (1980)
Lucille DIXON
v.
RUBY'S, INC. et al.
No. 13481.
Court of Appeal of Louisiana, First Circuit.
August 4, 1980.
*74 Alex W. Wall, Baton Rouge, for plaintiff-appellant, Lucille Dixon.
Ben Louis Day, Baton Rouge, for defendants-appellees, Ruby's, Inc., Aetna Cas. & Sur. Co.
Before COVINGTON, LOTTINGER and COLE, JJ.
LOTTINGER, Judge.
This is a workmen's compensation suit. The plaintiff appeals from a trial court judgment denying compensation.
There is no question that the plaintiff, Lucille Dixon, suffered a work related accident when she slipped and fell while working as a cook at Ruby's, Inc. Likewise, there is no question that the plaintiff is presently disabled from pursuing gainful employment. The sole issue on appeal is whether the plaintiff's disability is causally related to the accident she suffered while working at Ruby's.
The plaintiff had just begun her morning shift on November 11, 1977, when she slipped and fell on the concrete floor in Ruby's kitchen. The plaintiff was helped from the floor by several of her co-workers, one of whom testified that the plaintiff was in shock and pain. The plaintiff completed her work shift, which lasted until 2:00 that afternoon, but called in sick for the evening shift. She checked herself into the emergency room of Baton Rouge General Hospital, where she was treated for injuries to her back, right elbow and left leg.
On November 12, 1977-the day after the accident-the plaintiff visited Dr. A. K. Fleet, who diagnosed her problems as a severe lumbosacral strain and severe contusion of the buttocks, right elbow and left leg. She was treated by Dr. Fleet through January of 1978, when she was referred to Dr. Steven Wilson, an orthopedic surgeon. Dr. Wilson treated the plaintiff during the six month period between January 27, 1978 and July 27, 1978, but this doctor made no notations on his medical reports of a disabling knee injury. In fact, Dr. Wilson found that the plaintiff had a good range of motion in all of the joints, and he told her that she could return to work. As a result of Dr. Wilson's examinations and reports, Aetna Casualty and Surety Company discontinued compensation payments on August 18, 1978.
The plaintiff first saw Dr. F. C. McMains, an orthopedic surgeon, on October 31, 1978, Dr. McMains diagnosed a disabling contracture of the left knee, and he testified that Mrs. Dixon's complaints and his physical findings were consistent with the type of fall suffered by the plaintiff. He testified that absent any intervening trauma, the physical disability suffered by Mrs. Dixon was in all probability related to the slip and fall accident. However, when confronted with Dr. Wilson's reports which made no indication of any knee injury, Dr. McMains agreed with defense counsel that there may be some reasonable question as to whether the plaintiff's knee problem resulted from the accident or from some other intervening cause.
Dr. McMains also testified that Mrs. Dixon more likely than not would have favored her left leg or kept it in a flexed position from the time of the fall if she had suffered the knee injury at that time. While x-rays taken on Mrs. Dixon's leg did not show any evidence of an arthritic problem, Dr. *75 McMains agreed with defense counsel that the best diagnostic tool for detecting arthritis is an arthroscopy, which had not been performed. None of the plaintiff's co-workers who testified at trial could recall the plaintiff complaining of pain in her left leg, although the plaintiff did complain of some pain in other parts of her body.
The trial court found that the plaintiff failed to prove by a preponderance of the evidence that her disability resulted from a work related accident. He therefore denied compensation benefits, but allowed $247.00 in past medical costs. He assessed expert witness costs of $50.00 for Dr. Fleet and $75.00 for Dr. McMains against the plaintiff.
The plaintiff argues strenuously on appeal that a well settled presumption in our workmen's compensation law should apply to this case. On numerous occasions, our Supreme Court has held that a claimant's disability is presumed to have resulted from an accident if the injured person was in good health before the accident and the symptoms of the disabling condition appear after the accident and manifest themselves continuously afterwards, providing there is a reasonable possibility of causal connection between the accident and the disabling condition. Lindsey v. H. A. Lott, Inc., 387 So.2d 1091 (La. 1980); Haughton v. Fireman's Fund American Ins. Companies, 355 So.2d 927 (La.1978); Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977).
The unrebutted evidence in the case at bar shows that the plaintiff was in good health prior to the work related accident and that disabling knee and back pain appeared immediately after the accident. The fact that the plaintiff's co-workers do not recall her mentioning specifically an injury to her left leg is not necessarily controlling in this case. We do not find it unusual that the plaintiff did not discuss in great detail every part of her body that was injured as a result of the fall on the day of her accident. The fact that she was treated for left knee pain in the emergency room at Baton Rouge General Hospital and for left knee pain by Dr. Fleet on the day following the accident is sufficient in our minds to support the conclusion that a disabling condition of the left knee appeared immediately after the accident.
More troublesome, however, is the requirement that the symptoms of the disabling condition must manifest themselves continuously after the accident. As noted above, Dr. Wilson, the second physician who treated Mrs. Dixon some 2½ months after the accident, did not detect any problem with Mrs. Dixon's left knee for the entire six month period during which he treated her. He found, instead, good range of motion in all the plaintiff's joints, and he commented in a January 8, 1979, letter to Aetna that "it would seem hard to relate the difficulty with her left knee to her accident in 1977." On the other hand, two other doctors testified that there was a reasonable possibility of causal connection between the accident and the disabling condition, though one of them admitted that the possibility of causal connection would be diminished if the findings of Dr. Wilson were true.
Under the circumstances of this case, we find that plaintiff's proof, buttressed by the well established presumption in our law, preponderates in favor of her receiving workmen's compensation benefits. There is no question that Mrs. Dixon was injured on the job and suffered a left knee injury as a result of her fall. While the left knee injury may not have continuously manifested itself during the six month period Mrs. Dixon was treated by Dr. Wilson, other injuries associated with her fall continuously manifested themselves during the treatment by Dr. Wilson, and the evidence shows that the left knee injury more likely than not resulted from the fall in this case. Additionally, there was no evidence whatsoever to show that any intervening incident caused the knee problems Mrs. Dixon presently suffers. We must therefore reverse the trial court's decision denying compensation. According to Dr. McMains, plaintiff's inability to straighten her knee renders her disabled from performing her usual job activities. The doctor was of the opinion that this *76 condition is permanent. Necessarily, then, Mrs. Dixon is declared totally permanently disabled. We will remand this case for the purpose of fixing the amount of the compensation award, subject to any credit.
Therefore, for the above and foregoing reasons, the judgment of the trial court is reversed, and judgment is rendered in favor of plaintiff, Lucille Dixon, declaring her totally and permanently disabled. This case is remanded for further proceedings consistent with the views expressed herein. Defendant-appellee is to pay all costs.
REVERSED, RENDERED IN PART AND REMANDED.