428 So.2d 892 (1983)
Edgar Ernest OALMANN
v.
BROCK AND BLEVINS COMPANY, INC., et al.
No. 82 CA 0498.
Court of Appeal of Louisiana, First Circuit.
February 22, 1983.
*893 J. Michael Cumberland, New Orleans, for plaintiff, appellant.
Michael J. Paduda, Bogalusa, for defendant, appellee.
Before COVINGTON, LANIER and ALFORD, JJ.
COVINGTON, Judge.
Plaintiff, Edgar E. Oalmann, appeals a judgment in favor of defendants, Brock and Blevins Company, Inc. and United States Fidelity and Guaranty Company, denying him workers' compensation benefits for a disability allegedly sustained while employed by Brock and Blevins. U.S.F. & G. was sued as the employer's workers' compensation insurer. We reverse.
The plaintiff was employed as an iron worker doing rigging work for his employer, Brock and Blevins, at the papermill of Crown Zellerbach, Inc. in Bogalusa, Louisiana. He was sent to this job by his local union hall in July, 1979 and worked on the job until November, 1979. While engaged in this work, plaintiff claims to have sustained "an accident when he was bit (sic) by an insect [flea], thereby causing him to contract a grave illness, Tyfus (typhus) fever."
On November 21, 1979, plaintiff was admitted to the St. Tammany Parish Hospital with initial symptoms of chills, high fever, and severe headache. The treating physician was his family doctor, Dr. M.L. Pittman, Jr., who diagnosed plaintiff's illness as typhus (Dr. Pittman testified that the incubation period of typhus is seven to thirty days); the plaintiff also was diagnosed as having hepatitis. He remained in the hospital for a period of 26 days, and was unable to return to work for more than three months.
On appeal the plaintiff specified certain errors committed by the trial judge in reaching his decision which may be summarized as follows:
1. The trial court erred in admitting the medical treatise offered by defendants, because it is hearsay.
2. The trial court abused its discretion in determining that the employee had not met his burden of proof regarding causation between the flea bites at work and the resulting typhus fever.
We must first decide whether the court erred in admitting the medical treatise in evidence (for the purpose of impeaching the testimony of plaintiff's physician).
While the trial court has considerably more discretion than usual in workers' compensation cases and the formal rules of evidence are relaxed pursuant to LSA-R.S. 23:1317, the court is not authorized to disregard completely rules of evidence and rely on evidence that is clearly inadmissible. See Highstreet v. Regency Apartment Hotel, 337 So.2d 536 (La.App. 4th Cir.1976), writ denied 340 So.2d 994 (La.1977); 38 La.L.Rev. 502 (1978).
Medical treatises, being extrajudicial and unsworn statements by persons not available in court for cross-examination, are objectionable as hearsay evidence.[1] Such treatises cannot be admitted as independent evidence of the opinions expressed in them. *894 See Brown v. Collins, 223 So.2d 453 (La. App. 3rd Cir.1969). We hold that the trial court erred in admitting the treatise in evidence.
On the question of whether the plaintiff sustained his burden of proof, we consider LSA-R.S. 23:1021(1), which defines
"accident" as "... an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury." Byrer v. Southern Baptist Hospital, Inc., 350 So.2d 1233 (La.App. 4th Cir.1977).
If there is a suddenness either in the precipitating incident or in the manifestation of disability, the requirement of "accident" is satisfied. Self v. Riverside Companies, Inc., 382 So.2d 1037 (La.App. 2d Cir.1980), writ denied 385 So.2d 793 (La.1980); Francis v. Kaiser Aluminum & Chemical Corporation, 225 So.2d 756 (La.App. 4th Cir.1969).
The Louisiana Supreme Court has set forth the applicable legal principles governing the burden of proof necessary to establish a work-related injury in West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979), as follows:
In a workman's compensation suit, the employee must establish the work-accident causing the injury by a preponderance of the evidencei.e., "the testimony, as a whole, must show that more probably than [not] the employment accident caused the disability." Gradney v. Vancouver Plywood Co., Inc., 299 So.2d 347, 349 (La.1974). The causal relationship may be inferred when there is proof of an accident and an ensuing disability without an intervening cause. Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973).
In evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of this testimony. Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967); Farley v. Ryan Stevedoring Co., 238 La. 1048, 117 So.2d 587 (1960); Bonanno v. Decedue, 186 La. 1041, 173 So. 756 (1937).
With these principles in mind, we view the evidence in the record in the instant case.
At the trial on the merits, lay witnesses and a medical witness testified.
Edgar Oalmann testified that there were rats on the job site:
Q. Edgar, had there ever been any problems that you know of with rats being on the grounds there?
A. They have had rats all over the place down there.
Q. Did you see the rats?
A. I seen the rats.
Q. That was on the Crown Zellerbach plant that you're talking of now?
A. Crown Zellerbach.
Craig Oalmann also testified to seeing rats on the job site:
A. Had you ever seen any rats while you worked out at the mill?
A. Sure.
Q. Were they live rats?
A. Uh-huh, yes.
Q. Did you ever see any dead rats?
A. Yea ...
Q. Where did you see the dead rats?
A. Dead rats I seen were like under the equipment we were moving...
The presence of rats on the job site was further testified to by another co-worker, Victor Montgomery:
Q. When you worked there, did you ever see any rats?
A. Yeah, they had big rats there.
Q. Were they alive?
A. Uh-huh.
Concerning the "incident" whereby he contracted typhus fever, Oalmann testified:
Q. While you were working at the Crown Zellerbach plant, did you ever have any problems with any insects?
A. Fleas is about the only thing I have had any problem with.
Q. Would you tell me about the problems you had with fleas?

*895 A. Well I got into them. I reckon three or four times I got some on me, you know different times ....
Q. What happened when you got into these fleas?
A. Well theyI got some on my leg and, like I say, three or four times and theyjust like bite you, you reach down there and scratch it. You knock them off.
Q. Did any of these fleas bite you that you know of?
A. Yes.
Plaintiff denied having been bitten by fleas anywhere other than at the job site within three or four months of his hospitalization. When cross-examined as to the specific days he was bitten by fleas, plaintiff said that he could not state the exact date, because at the time of the occurrence he did not particularly pay attention to the bites, but he did remember being bitten a day or two before he was hospitalized (as well as two or three weeks before that).
Plaintiff's testimony regarding fleas was supported by that of his co-workers, Craig Oalmann and Victor Montgomery. Craig Oalmann stated that "two or three times I remember seeing [fleas]got on my pants, legs...." On cross-examination, Craig Oalmann stated:
Q. I'm just asking you if you ever saw any of your fellow workers with fleas on them; that's my question.
A. None other than my father, no.
Q. When did you see your father with fleas on him?
A. We were eating lunch one day.
Q. When was that?
A. I can't remember no dates.
Q. Can you tell me in relation to when he went into the hospital?
A. Two or three weeks, I guess ....
Q. Tell me what you saw that day you say you saw fleas on your father while you all were eating lunch.
A. Sat down to eat lunch, fleas got on him, some got on me. We got up and moved.
Q. And that was it?
A. We sat somewhere else.
Q. Did he say anything about getting bit?
A. Yeah. He scratched around on his leg some....
Q. Did you _ _ _ did he seem to suffer any consequences from it?
A. Well, he didn't come into work one day and I wondered what happened. When I came in from work, he was sick.
Q. When was that?
A. It was a couple of weeks later. And he went in the hospital, and was there for awhile.
Q. And that incident you're talking about was a couple or three weeks before he went in the hospital?
A. (Witness nods his head affirmatively).
Victor Montgomery further added testimony that although he did not see any fleas bite Oalmann, he did notice fleas on his [plaintiff's] clothes on more than one occasion.
The only other witness to testify at trial was plaintiff's treating physician, Dr. M.L. Pittman. The court accepted Dr. Pittman as an expert in the field of general medicine and surgery. Dr. Pittman told the court that in the course of his years of practice he had had experience with typhus fever. He testified that in 1946-47 he treated numerous patients in Tylertown, Mississippi, during an epidemic of typhus fever. Dr. Pittman stated, "... I think that I came in contact with many more cases than most doctors who are specialized in internal medicine ...."
Dr. Pittman testified, concerning his examination and treatment of Oalmann, that initially the patient was admitted to the hospital with a fever of undetermined origin, but after reviewing the lab results (coupled with the clinical findings) a diagnosis of typhus fever was made. On direct examination Dr. Pittman stated:

*896 Q. Let me ask you, doctor, typhus fever you stated is a relatively rare condition. How is it contracted?
A. From a rat, flea bite.
When questioned about his diagnosis, Dr. Pittman stated:
A.... The patient had certain symptoms. He had certain physical findings. He had a rash that was compatible of a rash that I had seen many times previously in reference to typhus fever and the laboratory findings were that you would find with typhus fever.
Q. Doctor, does typhus fever have a particular incubation period ...?
A. That could vary, I would say roughly seven to twenty days, somewhere in between seven and twenty days.
Apparently, Oalmann also showed symptoms of hepatitis some twelve days after his admittance into the hospital. Dr. Pittman testified that Oalmann showed a negative test for hepatitis on admission, and that the bilirubin test (which is indicative of hepatitis) was first positive on December 2, 1979. Dr. Pittman also testified that patient's hospital stay was not significantly extended due to hepatitis. Finally when questioned about disability, Dr. Pittman stated:
Q. Do you feel thator, could you tell me for how long a period of time Mr. Oalmann was disabled as a result of the typhus fever from that type of employment?
A. This patient was in the hospital for a period of approximatelyapproximately twenty-six days, almost a month in the hospital. And certainly two or three months following his hospitalization I would feel that he would be disabled from doing hard, active work until he completely recovered back to his general condition.
The record reveals that defendants called no witnesses at the trial; their defense consisted of merely attempting to impeach the credibility of the treating physician by introducing into evidence, over objection, a medical treatise on infectious diseases (which we have already decided was erroneously admitted in evidence). No other evidence was presented by the defense.
Insect bites or stings are compensable as "accidents" under the workers' compensation law. Cohrs v. Meadows, 342 So.2d 1172 (La.App. 1st Cir.1977). We hold that the flea bites constituted an accident within the intendment of the workers' compensation law.
On the specific issue of the causal connection between the accident and the disability, the claimant is entitled to the benefit of a presumption in certain cases. If an otherwise healthy worker suffers an accident at work and is thereafter disabled, it is presumed that there is a causal connection between the two, so long as the medical evidence establishes a reasonable possibility of such a connection. This presumption is not conclusive, but it forces the defendant to come forward with sufficient contrary evidence to rebut it. Allor v. Belden Corporation, 393 So.2d 1233 (La.1981); Herrin v. Georgia Casualty & Surety Company, 414 So.2d 1323 (La.App. 2d Cir.1982). In the present case, the defendants have failed to bear that burden. The unrebutted evidence shows that plaintiff was in good health and had no health problems prior to the incident in question. The medical evidence is thus clearly to the effect that the accident was at least a reasonably possible cause of the disability which has been diagnosed. It was, therefore, error for the trial court to fail to apply the well-established presumption that such disability was caused by the incident which it followed. Lindsey v. H.A. Lott, Inc., 387 So.2d 1091 (La.1980); Dixon v. Ruby's Inc., 389 So.2d 73 (La.App. 1st Cir.1980).
It is the opinion of the Court that sufficient evidence has been presented to establish that an employment-accident occurred and that it had a causal relationship to the disability of the employee, Edgar E. Oalmann. Although there were other possible explanations as to the cause of plaintiff's illness, not the least of which was infectious hepatitis (with which his family *897 was also inflicted),[2] the plaintiff has carried his burden of proving by a preponderance of the evidence that he sustained a work-related injury which caused his disability.
The final issue is whether plaintiff is entitled to penalties and attorney fees. There was a reasonable basis on which the employer and its insurer could reach the conclusion that Oalmann had not been injured on the job. The crucial dispute was whether he had sustained a job-related disability. Considering the serious legal question of causation between employment and accident, and considering the facts of the case concerning the occurrence of the accident and the question of disability due to infectious hepatitis, we do not find that the defendants were arbitrary, capricious or without probable cause in their refusal to pay benefits until after the case had been tried and decided. Bartley v. Insurance Company of North America, 388 So.2d 461 (La.App. 2d Cir.1980). We find that penalties and attorney fees provided in LSA-R.S. 23:1201.2 are not warranted in the case.
Therefore, for the above and foregoing reasons, the judgment of the trial court is reversed and judgment is rendered in favor of Edgar E. Oalmann so as to award the plaintiff disability benefits at the rate of $149.00 per week commencing from November 20, 1979 for the period of his disability, a period of four months (until March 19, 1980), together with legal interest on all installments from the due date of each.
Additionally, plaintiff is awarded judgment against defendants for all medical and incidental expenses, with interest from the date of judicial demand until paid. Plaintiff's demand for penalties and attorney fees is rejected. All costs in the district court, including the fees of expert witnesses, and all costs of this appeal are assessed against the defendant.
REVERSED AND RENDERED.
NOTES
[1] We have no quarrel with cases such as Rivers v. Macco, 391 So.2d 873, 876 (La.App. 4th Cir. 1980), which allow hearsay evidence within certain discretionary limits to show the causal relationship between the employment and the injury. Such cases are distinguishable from the instant case.
[2] On this point, the trial judge observed: "Additionally, there are other illnesses, specifically hepatitis, which are symptomatically similar to typhus and which may be confused with typhus. At this point the Court notes again that there are members of the plaintiff's household who, at the time of plaintiff's illness and its alleged incubation period, had hepatitis.