JjjCLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE

In the summer of 2002, claimant, Robert Lee Easly (“Easly”), contracted the West Nile Virus. Easly claims he got the virus when bitten by several mosquitoes while working in a box culvert for D & O Contractors, Inc. (“D & 0”). He reported to the emergency room on August 15, 2002 and was given antibiotics. He became ill and collapsed the next day so he reported to Ochsner for in-patient care. Upon his release, he suffered permanent paralysis of his right leg, tremors and the inability to stand and/or walk without a walker. He contends he now spends most of his time in a wheelchair.
Easly filed a workers’ compensation claim against D & O Contractors seeking indemnity and medical benefits. Trial was held April 1 and 2, 2004. The workers’ compensation court then found that Easly was injured by accident during the course and scope of his employment with D & O Contractors, Inc. before August 15, 2002. The court further found that Easly was entitled to temporary total disability benefits from August 15, 2002 through the date of judgment and | ¡¡continuing, all medical expenses, medication expenses and transportation expenses for his injury. The workers’ compensation court also found D & O Contractors, Inc. to have been arbitrary and capricious in their refusal to pay workers’ compensation benefits and they were ordered to pay a $2,000.00 penalty for failure to pay indemnity benefits, a $2,000.00 penalty for failure to pay medical benefits, and $5,000.00 in attorney’s fees.
D & O Contractors now appeals arguing that Easly has not met his burden of proving causation for his medical condition, that the workers’ compensation court erred in finding that Easly was entitled to indemnity and medical benefits, and that the court erred in finding that D & O Contractors was arbitrary and capricious and awarding penalties and attorney’s fees. For the reasons which follow, we reverse the workers’ compensation court’s judgment.

DISCUSSION

The worker’s burden of proof in establishing the occurrence of a job-related accident is preponderance of the evidence. Braxton v. Ryan’s Family Steakhouse, 04-148, (La.App. 3 Cir. 6/24/04), 878 So.2d 731, citing Bruno v. Harbert Int’l, Inc., 593 So.2d 357 (La.1992). Decisions of the workers’ compensation court are subject to the manifest error, or clearly wrong, standard of review on appeal. In applying this standard, we must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Jackson v. Wal-Mart Stores, Inc., 03-1054 (La.App. 5 Cir. 2/10/04), 868 So.2d 813, citing Hookfin v. Advantage Nursing Services, Inc., 03-340 (La.App. 5 Cir. 10/15/03), 860 So.2d 57.
In this case, we find that the workers’ compensation court was manifestly er *26 roneous in finding that Easly was injured during the course and scope of his employment with D & 0 Contractors, Inc. before August 15, 2002. Before trial, the parties stipulated that Easly was employed by D & 0 Contractors as a carpenter 14with an average weekly wage of $632.00. They also stipulated to the fact that Easly contracted West Nile Virus. The only issue at trial was whether or not Easly contracted the virus during the course and scope of his employment with D & 0 Contractors. We find that Easly did not prove by a preponderance of the evidence that he contracted West Nile Virus during the course and scope of his employment with D & 0 Contractors.
Easly reported to the emergency room of East Jefferson Hospital on August 15, 2002 with the beginning symptoms of West Nile Virus. At that time, he was employed with D & O Contractors and had been employed with the company for some time. During the summer of 2002, Easly had been working outside as a carpenter doing construction work on a box culvert. On one particular day, Easly recalled being “swarmed” with mosquitoes and getting several bites. Easly testified that he did not know the exact date of the accident. He does not know how much time passed between being bitten by the mosquitoes while working in the box culvert and getting sick.
Lee Nunez, a Superintendent for D & O Contractors during the summer of 2002, testified at trial. He stated that he worked with Easly, Isaiah Strong & Lewis on the box culvert job. Nunez testified that the box culverts were formed and completed in July 2002. After that work was completed, the concrete walls were poured on the side of the road and the sidewalks were poured.
Isaiah Strong, a laborer with D & O Contractors in the summer of 2002, testified that he saw the mosquitoes swarming around Easly one day and he commented that there were a lot of mosquitoes in the hole and they were going to tear Easly up. Easly testified that it was Kent Lewis, another co-worker, who had made those comments to him. Kent Lewis testified that he had no knowledge of Easly being bitten by mosquitoes while on the job and Easly never told him about any bites.
15UntiI he got sick, Easly would visit his friend Jerome Small’s home in Kenner. Easly would visit Small’s home three to four times a week to help out with some of the construction renovation work. Kent Lewis testified that Easly would go out to Small’s house around seven or eight o’clock at night. At trial Easly stated he didn’t recall, but he previously stated that he was pretty certain he was bitten by mosquitoes after the day in the box culvert. D & O Contractors claimed at trial that Easly could have been, or probably was, bitten by the infected mosquito while at Small’s house in Kenner, and not while working in the box culvert for D & O Contractors.
Dr. Brobson Lutz, an expert in Public health, epidemiology and infectious diseases testified that there is an incubation period of two to six days for the encephalitis and/or meningitis form of West Nile Virus that Easly contracted. The average incubation period is four to five days. He further testified that the first symptoms are fever and headache. Easly’s symptoms first started around August 13 or 14, 2002. Therefore, Dr. Brobson testified that there is a 95% probability that Easly was bitten between August 8 and August 12, 2002. Dr. Brobson testified that there is no possibility that Easly was infected with the virus in July.
Dr. Brobson further testified that mosquitoes swarming in a hole, like the box culvert described by Easly, were not likely *27 adult mosquitoes, but were more likely baby mosquitoes that do not carry West Nile Virus. He explained that adult mosquitoes do not go into holes, but stay mostly in trees. Dr. Brobson further testified that dusk is the most likely time an individual is at risk at being exposed to mosquitoes carrying West Nile Virus. And in August 2002, Kenner was listed as a “hot spot” for the state, meaning it had one of the highest number of reported cases of the virus in the state.
Jerome Small’s house was located in Kenner and Easly spent significant time there during June, July and August 2002. When Easly went to Small’s house, lfihe would spend time outdoors around seven or eight o’clock at night, which is around dusk. According to Dr. Brobson’s testimony, these conditions were favorable for exposure to mosquitoes carrying West Nile Virus. On the other hand, Easly’s construction job with D & O Contractors required him to be outdoors during the day. While working on the box culvert, he was down inside a hole, working with concrete. These conditions were less favorable for exposure to mosquitoes carrying West Nile Virus.
Based on the testimonies presented at trial, we find that Easly did not prove by a preponderance of the evidence that he was bitten by a mosquito and infected with the West Nile Virus while in the course and scope of his employment with D & O Contractors. He was more likely bitten by an infected mosquito and exposed to the virus while in Kenner at his friend’s home. The conditions were more favorable for exposure while he was at Small’s home in Kenner, rather than working for D & O Contractors in the box culvert. Easly provided no evidence to show that he was definitely bitten by a mosquito while working, and consequently, has shown no proof that he was exposed to West Nile Virus while working for D & O Contractors. Therefore, we find that Easly was not injured during the course and scope of his employment. The trial court was manifestly erroneous in holding otherwise. Since we find that Easly was not injured during the course and scope of his employment with D & O Contractors, we also find that he is not entitled to temporary total disability benefits, medical expenses, medication expenses, and transportation expenses.
Finally, we find the trial court erred in finding D & O Contractors to be arbitrary and capricious and awarding penalties. Penalties and attorney fees are recoverable under LA R.S. 23:1201(F) if the employer or insurer fails to commence payments of benefits timely or to pay continued installments or medical benefits timely, unless the claim is reasonably controverted. The statutes providing 17for imposition of penalties and attorney fees are to discourage indifference and undesirable conduct by employers and insurers, and are essentially penal in nature. Although the Workers’ Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. Jackson v. Wal-Mart Stores, Inc., 03-1054, (LaApp. 5 Cir. 2/10/04), 868 So.2d 813, citing Cooper v. St. Tammany Parish School Bd., 02-2433 (La.App. 1 Cir. 11/7/03), 862 So.2d 1001. The issue of whether or not an employer reasonably controverts a claim for benefits is a question of fact. Jackson, supra, citing Sterling v. Asplundh Tree Expert Co., 03-266 (LaApp. 3 Cir. 10/1/03), 856 So.2d 125. In order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Jackson, supra., citing Brown v. Texas-LA Cartage, 98-1063 (La.12/1/98), 721 So.2d 885, 890.
*28 In this matter, D & O Contractors denied Easly’s claim for benefits because it did not believe Easly had contracted West Nile Virus while working outside in the box culvert. We find that D & 0 Contractors had a valid reason or evidence upon which to base the denial of benefits. As a result, we find manifest error in the court’s decision that D & 0 was arbitrary and capricious in failing to pay benefits and, we find the court erred in awarding $2,000.00 for failure to pay indemnity benefits, $2,000.00 for failure to pay medical benefits, and $5,000.00 in attorneys fees.
In accordance with the above, we reverse the workers’ compensation court’s judgment.

REVERSED.