CARAWAY (ad hoc), J.
liThe workers’ compensation judge (“WCJ”) awarded benefits to the employee after finding that he had succeeded in his burden of proving that a work-related mosquito bite infected him with the West Nile virus which resulted in total and permanent disability. The defendant attempted to show that the large outbreak of the West Nile virus at the time demonstrated that plaintiff could not prove a work-related injury. For the following reasons, we affirm in part and reverse in part.

Facts

Appellee Michael Allen worked as an assistant operator at Graphic Packaging International, Inc.’s (“Graphic”) packaging plant in Monroe, Louisiana. Pursuant to his duties an assistant operator, Allen assisted in the operation of a “roll-back” machine that produced cardboard beer cartons. On August 9, 2013, Allen was sitting in the break room of the plant when he recalls being bitten by a mosquito on *1222 his left leg. On August 11, Allen began displaying fatigue and fever-related symptoms. On August 12, Allen sought medical treatment and was eventually diagnosed with West Nile Encephalitis (“West Nile”). As a result, Allen is no longer able to work.
On July 14, 2014, Allen filed a disputed claim for compensation. In its answer, Graphic asserted that the injury did not occur' within the course and scope of Allen’s employment. At trial, Graphic did not dispute that Allen contracted West Nile. Graphic disputed whether Allen’s West Nile was the result of the single mosquito bite he allegedly sustained while sitting in the break room on August 9, 2013.
| ¡Allen testified that on August 9, 2013, he was in an enclosed break room of plant 70 between the hours of 10:00 a.m. and 1:00 p.m. when he specifically remembers being bitten on his left leg by a mosquito. Allen was wearing shorts on the day in question. He testified that he received two 10-minute breaks during the day but does not recall during which of those breaks he was bitten. He further testified that his coworker, Juvelle Williams, was in the break room during one of the breaks when Allen sustained the mosquito bite. However, it was shown during the cross-examination of Williams and from the introduction of his employee timecard that Williams was not at work on August 9. Nevertheless, Allen maintained that he was bitten on August 9 in the break room. There were, however, no eyewitnesses to observe the alleged isolated mosquito bite. Allen’s employee time card shows that during the workweek of August 5-9, he worked 12-hour days at the plant, with the exception of Friday, August 9, when he worked eight hours.
Eddie Wilhite, a machine operator for Graphic, testified that he was familiar with the general work area of the plant and had seen many mosquitos flying in the area. He reported that he knew of a number of complaints from other coworkers about mosquitos. Despite the prevalence of mos-quitos in the general work area, he testified on cross-examination that he had never seen a mosquito in the break room. Lastly, he testified that a month after Allen’s release from the hospital, Allen told him that the mosquito bite that hospitalized him had occurred at Graphic.
Kimmey Ray Adams, a Graphic employee and a first cousin to the claimant, testified that he noticed mosquitos in the work area and has, at 13times, seen a “mosquito or two” in the break room. However, he also testified that he had never seen swarms of mosquitos at Graphic. He further testified that he visited Allen several times in the hospital and during one of those visits, Allen told him that he was bitten by a mosquito at work.
Allen’s supervisor, Olu Fasheyide, testified that, at times, there are mosquitos “everywhere” throughout the plant and insect repellant is provided to employees. Fasheyide noted that during the summer months, the plant is exposed to the outdoors. He explained that the plant’s large factory doors remain open while fans blow continuously throughout to keep the inside of the unair-conditioned plant from becoming too warm. He also reported that he had seen two or three mosquitos every now and then in the break room, noting that it was nothing out of the ordinary.
Juvelle Williams testified on behalf of the claimant. Williams was a coworker and regularly interacted with Allen. Williams also contracted West Nile in 2013, which he attributes to a bite he sustained at work. Although, similar to Allen, Williams testified that he does not know the particular mosquito which resulted in West Nile.
On direct examination of Williams, Allen’s attorney made no reference to Allen’s break room bite on August 9, 2013. In *1223 stead, claimant’s attorney elicited testimony regarding Williams’s general familiarity with the shared break room and work area, the primary focus being to establish a connection between his West Nile diagnosis and Allen’s. On cross-examination there was testimony from Williams about the specific day of the alleged bite. During cross-examination, Williams admitted that he was not working on the day he claimed to have been in the break room with Allen. [4In fact, the record reveals that Williams did not work from August 6 to August 9. As such, his last day of work for that week was on Monday, August 5. Williams never testified about any details regarding a specific mosquito bite of Allen and therefore Williams did not corroborate the specific incident in question.
Karen Collins testified as a fact witness for Graphic. She testified that she is the former girlfriend of Allen and was dating him at the time he contracted West Nile. She testified that when Allen returned home from work on August 9, 2013, he told her that he was going to cut his grass, presumably exposing himself to a higher risk of mosquitos. She further noted transporting Allen to the hospital on August 14. She provided admission information on behalf of Allen because he was unable to do so. The intake report from Glenwood Medical Center states that the chief complaint was a fever. The report also contains a statement made by Collins that “[h]is friend states that he was out in the yard two days ago and may have gotten overheated.” Collins testified that Allen was out in his yard cutting his grass two days earlier. The report further contains a statement suggesting that Allen had gone to a restaurant shortly before his hospitalization. Collins also testified that months after his release from the hospital, claimant had told her that “he had heard that someone else at the job had gotten bitten [sic]” and believed that he “could have gotten bitten also.” In addition, Collins testified that Allen told her that he believed he had been bitten by the same mosquito.
Allen was called on redirect to testify as to the allegations made by Collins. Allen asserted that he had not told Collins that he would mow his |Byard and, additionally, that his yard, and hers, had been mowed by a Mr. Brown.
The director of the Ouachita Parish Mosquito Abatement District, Shannon Rider, testified for the claimant in reference to the prevalence of mosquitos in Ouachita Parish during the summer of 2013. Notably, she provided no opinion as to how Allen contracted West Nile other than to say that one is more likely to contract West Nile during the early morning or early evening hours. As director of the program, it was her job to oversee, among other things, the control of mosqui-tos and related diseases throughout the parish. Rider testified that her Department places mosquito traps at random locations throughout Ouachita Parish. Mos-quitos are collected in these traps and are tested for the presence of West Nile. Much testimony was elicited in reference to the location and the function of the mosquito tops. Specifically, there were traps in locations near both the Graphic Packaging plant and Allen’s house, both of which tested positive for West Nile. Additionally, Rider noted that the only way to tell if a mosquito is infected with West Nile is to have that particular mosquito tested for the virus.
Rider testified that the mosquito traps will be designated as positive for West Nile if at least one of the mosquitos in the top tests positive for West Nile. Aerial spraying of mosquito repellent occurs when the outbreak of the virus reaches an infection rate of seven mosquitos. Rider explained that the presence of at least 7 infected mosquitos in the trap per 1,000 *1224 caught meets the minimum threshold for abatement measures, which includes aerial spraying of infected areas. A map introduced a trial reveals the locations of | Ball traps that tested positive for West Nile in Ouachita Parish in 2013 as well as trapping dates. Rider testified that based on the number of positive traps throughout the area, Ouachita Parish sustained a “significant outbreak” of West Nile with the Parish being one of the higher level of incidents in the state.
Dr. Brobson Lutz was called to testify as a medical expert by Graphic Packaging. He was accepted as an expert in the field of epidemiology. Lutz was asked to comment on the testimony of Shannon Rider. Lutz agreed with the Rider testimony that it is very unlikely for a person that contracts West Nile to have been bitten during the daytime. Lutz noted that the Southern House mosquito, the most common West- Nile infected mosquito identified in the Ouachita area, is not active during the middle of the day. While Lutz testified that people can be bitten during the middle of the day, he noted that those mosquitos were unlikely to transmit West Nile. He agreed with Rider that the only way to determine if a particular mosquito bite is the one to cause an ■ infection of West Nile is to have the particular mosquito tested. Lutz testified that most people report multiple mosquito bites rather than a specific bite. Further, he noted that the typical incubation period for the virus is 3-5 days but it can be 2-14 days.
With respect to the mosquito traps and their respective locations, Lutz testified that the relation of those positive traps to the packaging plant are not significant. He testified that the collection sites are very diverse and further apart around where Allen lived. He explained that positive traps are just the “tip of the iceberg” and a positive trap does not mean that the location is the only place where infected mosquitos exist. Additionally, Lutz |7was asked to comment on the fact that Williams, another Graphic employee, contracted West Nile around the same time that Allen did. Lutz testified that it would not be unusual for two people to work together to have West Nile related symptoms to have acquired it at different places. With respect to the number of reported cases, Lutz testified that “based on the number of reported neuroinvasive cases you had over a thousand people in Monroe who were infected with the virus during this time period.” He stated that based on the size of the outbreak and the fact that around 95% of infected persons show no symptoms at all, the fact that two people contracting West Nile around the same time and working for the same company does not meet the epidemiological definition of a single source outbreak.
On February 17, 2016, the WCJ provided extensive oral reasons for a judgment in favor of Allen, finding him totally and permanently disabled and awarding him all reasonable and necessary medical treatment related to West Nile. The judge also found that Allen was entitled to penalties and attorney fees. She found Allen’s testimony to be credible and also found that no other evidence discredited or cast into serious doubt his version of the incident. The judge placed considerable emphasis upon several pieces of circumstantial evidence. Namely, the judge noted that 1) Allen’s development of the symptoms occurred within the 2-14 day incubation period; 2) testimony was provided concerning the prevalence of mosquitos at the plant; 3) Allen’s coworker, Williams, contracted the virus around the same time as Allen [1]; and *1225 4) there were mosquitos that tested positive for West Nile near the packaging plant. Further, the judge noted that the Isdefendants acted arbitrarily and capriciously in choosing to “ignore these facts” and were therefore ordered to pay penalties and attorney fees.

Discussion

A threshold requirement in a workers’ compensation case is that a plaintiff establish “personal injury by accident arising out of and in the course of his employment.” Bruno v. Harbert Int’l, Inc., 593 So.2d 357, 361 (La. 1992) (quoting La. R.S; 23:1031). Although the workers’ compensation laws are liberally construed in favor of coverage, the plaintiffs burden of proving personal injury by an accident is not relaxed and must be proven by a preponderance of the evidence. Coats v. American Tel. & Tel. Co., 95-2670 (La. 10/25/96), 681 So.2d 1243, 1245.
In a workers’ compensation case, the appropriate standard of review to be applied by the appellate court to the WCJ’s finding of fact is the manifest error or clearly wrong standard. Dean v. South-mark Const., 03-1051 (La. 7/6/04), 879 So.2d 112; Dunlap v. Madison Parish Sch. Bd., 46,139 (La.App. 2 Cir. 4/13/11), 61 So.3d 833. Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. Dunlap; supra; Harris v. Casino Magic, 38,137 (La.App. 2 Cir. 1/28/04), 865 So.2d 301, writ denied, 04-0502 (La. 4/8/04), 870 So.2d 275.
A plaintiffs testimony alone may be sufficient to establish an accident provided that “(1) no other evidence discredits or easts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident.” Bruno, 593 So.2d at 361. In determining whether the Bruno elements are I «satisfied, the commentators have articulated six pertinent factors the courts have considered: (1) late report, (2) supervisor and coworker testimony, (3) family and friends’ testimony, (4) medical evidence, (5) continuing to work, and (6) prior injuries. See 13 H. Alston Johnson III, Workers’ Compensation Law and Practice: Malone & Johnson, Louisiana Civil Law Treatise § 253 (3d ed.1994);- 1 Denis Paul Juge, Louisiana Workers’ Compensation, § 8:1 (2d ed.2002).
Work-related insect bites or stings have been held compensable as “accidents” under the workers’ compensation law. Oalmann v. Brock and Blevins Co., Inc., 428 So.2d 892 (La. App. 1st Cir. 1983); Easly v. D & O Contractors, Inc., 04-877 (La. App. 5th Cir. 1/25/05), 895 So.2d 23, writ denied, 05-0440 (La. 4/22/05), 899 So.2d 572; Graham v. Nissan, 39,656 (La.App. 2 Cir. 6/29/05), 907 So.2d 213.
In Oalmann, the claimant contracted typhus fever at the iron works factory where he was employed. Typhus, a relatively rare condition, is an infectious disease transmitted by fleas, usually on rats. Several coworkers testified to the large presence of rats and fleas at the factory and further testified to occasional flea bites sustained while working. While the plaintiff could not state the exact date that he was bitten, the appellate court nevertheless found that he had established a causal relationship between the employment accident and the disability. Oalmann, supra.
In Easly, the claimant - contracted West Nile Virus in Kenner, Louisiana, in the summer of 2002. The claimant had been working outside as a carpenter doing , construction work on a box culvert when he alleged that he was bitten multiple times by “swarms” of mosquitos. He could not, Imhowever, remember the exact date that he was bitten but was certain that he was bitten while working construction. Several coworkers testified to the presence of mos- *1226 quitos at the construction site. The claimant also testified that he would visit his friend’s home several times a week to help with renovation work around dusk, a time during which exposure to West Nile is highest. Expert testimony revealed that the alleged mosquitos surrounding the box culvert construction site were not the type of mosquitos that could carry West Nile and thus the conditions at the site were less favorable for exposure to West Nile. In addition, the expert noted that Kenner, Louisiana in the summer of 2002 was a “hot spot” for West Nile, explaining that it had one of the highest number of reported cases in the state. As such, the appellate court found that the plaintiff had not proven by a preponderance that he contracted West Nile while working for his employer and was more likely bitten at his friend’s house. Easly, supra.
First, it is important to emphasize that the “accident” in this case rests upon circumstantial evidence. The widespread outbreak of West Nile throughout Ouachita Parish and the summer conditions supporting the mosquito population generally demonstrate that Allen was exposed to other mosquitos in the days before and after the accident. Allen did not prove by direct evidence that the break room mosquito carried the disease and was the cause of his “accident.” He did not, therefore, from that perspective, witness an accident and attempt to establish it by his own testimony. He faced a burden of proof to show circumstantially that the break room mosquito carried the disease.
|uThe circumstances Allen emphasizes were his lack of exposure to mosquitos elsewhere and his definitive remembrance of only one mosquito bite in the days before the accident. Allen also showed that from August 5th to August 9th he was working at Graphic. Thus, in an effort to show his lack of exposure outdoors, he asserted that during that work period, his time was mainly spent at home and at work. Finally, Allen emphasized that Williams’s claim of West Nile contamination on the job is circumstantial evidence that the break room mosquito was likely a carrier of the disease.
Allen’s case for his contamination by the break room mosquito is reviewable on appeal with the manifest error standard and with the legal measure of Allen’s burden of proof for a circumstantial evidence case. We can accept that the trier-of-fact determined that he was bitten in the break room on some day in close proximity to August 11, when his symptoms first began. We note, however, that, his version of that incident in the workplace was shown not to have occurred on August 9. The bite could not have occurred on August 9 with Williams present because Williams was not working on that day. With Williams’s last day of work being August 5, the bite reported by Allen would have occurred approximately 6 days before his resulting symptoms. Thus, the WCJ was not manifestly wrong in concluding that Allen was bitten in the break room with Williams present. Nevertheless, the length of time between that bite and Allen’s hospitalization casts some doubt circumstantially on whether the break room mosquito caused Allen’s West Nile due to the incubation period for West Nile. This doubt is based upon the circumstantial body of evidence asserted by the defense which will now be reviewed.
112Graphic presented its own circumstantial evidence case in defense attempting to show that it was very likely another mosquito away from the Graphic plant caused Allen’s West Nile. The factors demonstrated by Graphic for its position were:
• The incubation period before symptoms occur is 2-14 days, with the typical time being 2-5 days after a person is bitten.
*1227 • The Ouachita Parish outbreak was widespread with contaminated mosqui-tos trapped throughout the area and over 1,000 people contracting the virus.
• Allen’s hospital admittance report showed that he had overheated during outside work 2 days before his hospitalization.
• Allen had exposure outside to mosqui-tos in other places away from the Graphic plant during the 14 days before his symptoms.
Concerning Allen’s potential for exposure throughout the 14 days before his symptoms, Allen could not completely deny that he never left his home during that time for activities other than work. The hospital record also revealed that he had dined out on one occasion before his hospitalization. Graphic’s expert emphasized that a mosquito bite can occur without a person’s knowledge. Additionally, Allen’s recollection after some passage of time of all his activities during that two-week period would not be expected to include every particular activity that occurred in his life during that critical two weeks. Thus, we agree that there is established from the record and common sense that Allen had exposure to mosquitos in other places away from the Graphic plant during the 14 days before his symptoms. Nevertheless, in that same vein, the lengthy time Allen expended on his job in the plant in the week before hospitalization exposed him to mosquitos other than the culprit break room mosquito.
|1sWith these two circumstantial cases regarding where Allen’s contamination with the disease originated—whether at the jobsite or elsewhere—the WCJ’s conclusion can be affirmed if the possibility of Allen’s exposure at work is more probable than not. The most probable time for contracting the disease was the two to five-day period before Allen’s initial symptoms which began on August 11. This would allow Allen’s mosquito bite in the break room on August 5th at 5-6 days as the possible contaminating event. More importantly, however, Allen’s time in the Graphic plant during the entire week before August 11 allows for the conclusion that he was probably bitten during that 56 hours on the job. The testimony indicated that the large doors to the plant were open allowing for exposure of mosquitos to workers. Also, during that week, Allen’s time records showed that he was in the plant, early in the morning and late in the afternoon. These are the times that mos-quitos are the most active as confirmed by the experts.[2]
Accordingly, from this analysis, we find that Allen showed that it was more probable than not that he was bitten on the job by a mosquito carrier of West Nile. We therefore affirm the WCJ’s ruling that a work-related accident occurred.
Graphic’s next assignment of error contests the finding that Allen is totally and permanently disabled. Graphic argues that both parties after trial advised the WCJ that permanent and total disability under La. R.S. 23:1221 |14was not an issue for decision after the recent deposition of Allen’s treating physician, Dr. Boykin. In his deposition, Dr. Boykin stated that a neuropsychological examination was neces *1228 sary to “determine severity of his memory loss to make a final decision about what he can and can’t do.” While Dr. Boykin originally testified that Allen was permanently and totally disabled, he subsequently stated that he was not specifically treating him to give a disability opinion. Dr. Boykin further testified that he had seen some improvement in Allen and could not say whether Allen could potentially work at a “light capacity” sometime in the future.
Based on both the understanding at trial that (1) a neuropsychological exam was necessary following a finding of causation and (2) the fact that claimant’s treating physician recommended further testing to determine the future disability, Graphic avers that a finding of permanent and total disability is not supported by clear and convincing evidence. As such, Graphic maintains that the WCJ committed manifest error. In addition, Graphic argues that an award of permanent and total disability is inappropriate based on the statutory requirements of La. R.S. 23:1226(D), which provides, in part, that the WCJ must find a reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment. Graphic notes that the WCJ did not make a determination regarding any reasonable probability that Allen could be rehabilitated sufficient to achieve gainful employment and thus erred in awarding permanent and total disability.
La. R.S. 23:1221(2) provides in pertinent part:
I i,-(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
[[Image here]]
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subpar-agraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment, (emphasis added)
The clear and convincing standard in a workers’ compensation case is an intermediate standard falling somewhere between the ordinary preponderance of the evidence civil standard and the beyond a reasonable doubt criminal standard. Hatcherson v. Diebold, Inc., 00-3263 (La. 5/15/01), 784 So.2d 1284; Young v. Physicians & Surgeons Hosp., 39,348 (La.App. 2 Cir. 3/2/05), 895 So.2d 723. To prove a matter by clear and convincing evidence means to demonstrate that the existence of the disputed fact is highly probable or much more probable than its nonexistence. Young, supra.
Absent any evidence to support the notion that a workers’ compensation claim *1229 ant will be forever disabled, or is unable or unwilling to learn a new compensable skill or polish the old one he already has, every procedural precaution must be taken to ensure that claimant is not prematurely declared permanently and totally disabled. Comeaux v. City of Crowley, 2000-928 (La.App. 3 Cir. 12/6/00), 773 So.2d 899, writ granted, 787 So.2d 1004, aff'd on other grounds, 2001-0032 (La. 7/3/01), 793 So.2d 1215. In the supreme court Comeaux opinion, the court held La. R.S. 23:1221(2)(c) requires consideration of the claimant’s physical condition, wage earning ability, and unsuccessful rehabilitative efforts including the claimant’s educational level and ability to be educated. Comeaux v. City of Crowley, 2001-0032, (La. 7/3/01), 793 So.2d 1215. In addition to La. R.S. 23:1221, La. R.S. 23:1226(D) provides:
D. Prior to the hearing officer adjudicating an injured employee to be permanently and totally disabled, the hearing officer shall determine whether there is reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education.
The requirement of La. R.S. 23:1226 must be construed in pari materia with La. R.S. 23:1221(2); Comeaux, supra, Jones v. Walpole Tire Service, Inc., 38,206 (La.App. 2 Cir. 3/3/04), 867 So.2d 927. Unsuccessful rehabilitation attempts, including the lack of ability to be educated or retrained, along with physical incapacity, are proper factors to consider in determining whether a claimant proved his permanent and total disability. Comeaux, supra, Dennis v. Boh Bros. Const. Co., 39,548 (La.App. 2 Cir. 4/6/05), 899 So.2d 761, writ denied, 05-1178 (La. 11/28/05), 916 So.2d 145.
In this case, the WCJ, in the oral reasons for judgment, found that the claimant is entitled to permanent and total disability benefits based upon the findings of Dr. Micheál Boykin. In addition, the WCJ stated that the claimant is also entitled to all reasonable and necessary medical treatment | ,7related to the West Nile “including the neuro-psychiatric [sic] evaluation as recommended by Dr. Boykin.”
Under these facts, we find that the WCJ erred in awarding the claimant permanent and total disability benefits prior to a proper evaluation of rehabilitation possibilities. The WCJ’s finding that Allen is entitled to a neuropsychological evaluation in the future suggests that the true extent to Allen’s disabilities and potential ability to work have yet to be determined. The medical evidence and lay testimony established that Allen was totally disabled at the time of trial, but the record contains no evidence of evaluation of rehabilitation possibilities. For this reason we cannot say that Allen is totally permanently disabled. Consequently, we find that Allen is temporarily totally disabled until the requirements of La. R.S. 23:1226(D) have been satisfied or Allen is otherwise found to be able to perform some work activities.
Graphic’s final assignment of error challenges the finding that the defendants were arbitrary and capricious in their denial of benefits. Penalties and attorney fees are recoverable under La. R.S. 23:1201(F) if the employer or insurer fails to commence payments of benefits timely or to pay continued installments or medical benefits timely, unless the claim is reasonably controverted. The statutes providing for imposition of penalties and attorney fees are to discourage indifference and undesirable conduct by employers and insurers, and are essentially penal in nature. Although the Workers’ Compensation Act is to be liberally construed in regard to *1230 benefits, penal statutes are to be strictly construed. Jackson v. Wal-Mart Stores, Inc., 03-1054, (La.App. 5th Cir. 2/10/04), 868 So.2d 813, citing Cooper v. St. Tammany Parish School Bd., 02-2433 (La. App. 1 Cir. 11/7/03), 862 So.2d 1001. The issue of whether or not an employer reasonably controverts a claim for benefits is a question of fact. Jackson, supra, citing Sterling v. Asplundh Tree Expert Co., 03-266 (La.App. 3 Cir. 10/1/03), 856 So.2d 125. In order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Jackson, supra, citing Brown v. Texas-LA Cartage, Inc., 98-1063 (La. 12/1/98), 721 So.2d 885, 890.
In this case, there were numerous factors sufficient to validate Graphic’s reasonable controversion of Allen’s claim, including Allen’s late filing of his disputed claim, the lack of any direct evidence linking his break room bite to West Nile, the fact that Ouachita Parish sustained a significant parish-wide outbreak of the virus during the summer of 2013, and the general existence of two probable hypotheses regarding causation. Accordingly, we find that penalties and attorney fees provided in La. R.S. 23:1201.2 are not warranted in this case.

Conclusion

For the foregoing reasons, the ruling of the WCJ finding a work-related accident and injury is affirmed. The WCJ’s finding of a total and permanent disability is reversed. Allen’s disability is hereby adjudged and decreed to be temporary total disability. The WCJ’s ruling for penalties and attorney fees is reversed. Costs of this appeal are assessed to Graphic.
AFFIRMED IN PART; REVERSED IN PART; RENDERED.

. It is unclear from the record whether Williams filed a disputed claim for compensation.

. Graphic claims error that the WCJ did not allow Dr. Lutz’s expert opinion that the daytime mosquito bite in the break room was probably not by the Southern House mosquito which was the primary carrier of West Nile. We find that the facts regarding dusk and dawn activities of that mosquito were fully established by Dr. Lutz in his testimony and the inference weighing against Allen’s infection during the day by the break room mosquito was fully established and before the WCJ. We, therefore, find no merit in Graphic's objection to the WCJ’s evidentiary ruling.