LANDRY, Judge.
This is a claim for total permanent workmen’s compensation benefits for disability-resulting from the incident of a relatively rare disease known as scleroderma, alleged to have been caused or aggravated by an accident which reputedly occurred while plaintiff Adam Fitch was in the employ of defendant L. T. & W. Drilling Corporation, the insured of respondent Insurance . Company of North America. The trial court sustained plaintiff’s claims in part. Following trial below, plaintiff died. Plaintiff’s heirs were properly substituted as parties herein and have appealed the lower court’s judgment contending the award should be increased to allot maximum recoverable benefits. Defendants have neither appealed nor answered plaintiffs’ appeal and have restricted their resistance to plaintiffs’ appeal by asking merely that the judgment of the lower court be affirmed.
Both in the trial court and on appeal defendants vigorously contend plaintiff has failed to establish the occurrence of an accident. In the alternative defendants argue compensation has been paid for the full period of disability attributable to the accident. In the further alternative, defendants concede decedent is totally and permanently disabled due to scleroderma but that said condition was neither caused by nor aggravated by the accident. We find defendants’ alternative contentions well grounded and for that reason affirm the judgment of the trial court. So concluding, we pretermit all consideration of the issue of the alleged occurrence of an accident.
Decedent, 32 years of age at the time, was allegedly injured October 10, 1965, while discharging the duties of his occupation as roustabout in the employ of defendant L. T. & W. Drilling Corporation.
At the trial plaintiff Fitch testified that while using tongs to handle drilling pipe in the course of assisting in drilling a well on one of his employer’s rigs, he suffered severe strain of his arms and shoulders when the pipe gyrated to such extent the tongs were wrenched violently while still in his grasp. Mr. Fitch also stated he felt immediate pain as the result of the muscle sprain.
Following the “accident” plaintiff received medical treatment at defendant’s expense over an extended period of time during which it was discovered he was suffering from tenosynovitis of both wrists and forearms. According to the medical testimony, tenosynovitis is an inflamed or diseased condition of the tendons and their encasing stenovial sheaths. During plaintiff’s treatment for tenosynovitis, it was also found plaintiff was afflicted with gout and with a rather uncommon malady known as scleroderma. It suffices at this point to say it is established beyond doubt that Mr. Fitch had both gout and scleroderma prior to the reputed accident. Appellants do not contend decedent was totally and permanently disabled because of the tenosynovitis but rather that his disability results from the scleroderma, either caused or aggravated by the averred traumatic mishap.
Defendants concede Mr. Fitch was totally and permanently disabled because of scleroderma. They maintain, however, said condition pre-existed the avowed accident and neither resulted from nor was aggravated thereby and consequently said condition, though disabling, is not com-pensable.
The trial court, finding an accident occurred from which plaintiff sustained teno-synovitis, allowed compensation therefor for 24 and % weeks, together with medical expense, attorney’s fees in the sum of $300.-00 and 12% penalties. As previously stated, plaintiffs have appealed asking for maximum benefits for 400 weeks while defendants merely pray the judgment of the trial court be affirmed.
The sole question before the court is one of fact, namely: Have plaintiffs established by a preponderance of evidence that *189 decedent’s scleroderma was either caused or aggravated by the “accident.”
Following the accident decedent was treated by Dr. A. N. McIntyre, general practitioner, who diagnosed decedent’s condition as tenosynovitis and treated decedent for said condition until November 12, 1965, on which date decedent was referred to Dr. G. C. Battalora, Jr. Subsequently, on April 11, 1967, based on examination of decedent and consideration of certain hospital records made available, Dr. McIntyre concluded decedent was suffering from scleroderma. In Dr. McIntyre’s opinion scleroderma is neither caused nor aggravated- by trauma.
In February, 1966, Dr. Battalora, performed surgery on decedent’s forearms to relieve the tenosynovitis. The surgery was repeated on decedent’s right forearm in March, 1966, at which time Dr. Battalora noted plaintiff also had gout. Dr. Batta-lora did not diagnose decedent’s condition as scleroderma. He felt plaintiff could resume limited employment in the latter part of March, 1966. Dr. Battalora expressed the view that neither gout nor scleroderma are caused or aggravated by trauma.
The medical testimony concerning the nature, cause, course and treatment of scleroderma may be summarized by stating the malady is a disease of the collagen tissues which constitute part of the connective tissues that hold the body together. Its cause is unknown, its onset almost always insidious. As a rule, the course of the disease is gradual and involves long period of remission. Medical science has not found a cure for this particular ailment. While the term scleroderma literally means “hard skin”, the disease is not limited to the skin but may affect any organ having collagen or connective tissues as one of its components. Frequently the disease attacks bodily organs such as the heart, brain, kidneys or lungs and also appears in the gums causing a loss of teeth. When the condition is confined to a local area, it is termed a “scar”; when diffuse or present in several bodily organs (systemic), it is denominated scleroderma. Scleroderma in the wrists causes the joints to bind thus preventing the formation of 'a full, tight fist.
It suffices to state that decedent’s sclero-derma is shown by the medical evidence to have antedated the date of the accident. It further appears that in July, 1966, Dr. John R. McDonough of the United States Public Health Service Hospital, New Orleans, in which institution decedent was examined and treated extensively, found decedent’s entire system, including the heart, lungs and teeth, affected by scleroderma.
Dr. John R. McDonough, Internist, explained the nature of the disease as follows:
“Scleroderma is a disease that is classified among the connective tissue diseases, and it involves the collagen fibres in various parts of the body. Its cause is unknown. Its onset is almost always insidious and gradual, and it is manifested by a course that generally runs quite slowly with gradually and unpredictable progression and frequently long periods of remission acquiescence (quiescence)' involving commonly the skin over the hands, the arms, the chest, the abdomen, face and involving other tissues of the body sometimes also. These other tissues being the lung, the heart, occasionally the kidney, the esophagus and the small bowel, and the paradontal (periodontal) membranes that line the roots of the teeth are also sometimes involved.”
After testifying as to the nature and cause of the disease, Dr. McDonough expressed the opinion that medical science does not know whether trauma will initiate or aggravate existing scleroderma but that the better medical view is that trauma neither causes nor aggravates this particular condition.
*190 In this regard we cite Dr. McDonough’s testimony as follows:
“I think that is (sic) the general informed medical feeling that the cause or causes of scleroderma are not known, and that we don’t know whether or not trauma will initiate or aggravate sclero-derma, but I think it is the general feeling of people that have taken care of patients with scleroderma and that are knowledgeable in the field, that there is no evidence implicating, no evidence implicating trauma as a cause of sclero-derma.
“In my opinion the trauma in Mr. Fitch’s case probably was not the thing that initiated or exacerbated his scleroderma, but I think that consideration should be given to the very real possibility that Mr. Fitch’s scleroderma began several years before he was first diagnosed in September of 1966, and I had the question in my own mind as to whether or not this scleroderma might have been a factor leading to his trauma rather than vice versa.”
Dr. Vincent Derbes, who examined plaintiff together with Dr. McDonough, testified decedent was afflicted with scleroderma long prior to the date of the alleged accident. His diagnosis in this regard was based on hospital records and case history related by decedent himself. Dr. Derbes also testified the best medical opinion holds scleroderma to be an immunological disturbance meaning a derangement of the bodily protective mechanisms which ward off infectious diseases, as a result of which the body produces self-destructive substances. Dr. Derbes was of the opinion that the more informed medical view is that scleroderma is neither caused nor aggravated by trauma. In this connection we quote Dr. Derbes’ testimony as follows:
“I can only give you an opinion. I mentioned and you agreed with me and everyone would state that the ultimate cause of this disease is not known. If that is the case, I cannot tell you that an accident could not cause the disease. I can simply say that I believe he had the disease before the accident, and that current thinking among people who study the disease is that the disease is not on this basis at all, not on the basis of trauma at all but upon the basis of derangement of the protective functions of the body, the protective mechanisms of the body.”
Testifying in plaintiffs’ behalf, Dr. James B. Stubbs, who specializes in the field of internal medicine, stated in substance that while plaintiff was suffering from sclero-derma, if the condition was “subclinical” on the date of the accident, it could have been traúmatically activated to the point of clinical significance. This is, of course, but another way of stating the disease could be aggravated by trauma. Dr. Stubbs conceded scleroderma is a “grey area” about which medical authorities frequently disagree. Dr. Stubbs explained that some authorities consider the malady primarily a disorder of the skin while others, including himself, deem it a disease of the sympathetic or automatic nervous system. In Dr. Stubbs’ opinion, the sympathetic nervous system “may perhaps” suffer traumatic injury thus aggravating a subclinical condition to one of clinical significance. Dr. Stubbs was also of the opinion that in decedent’s case the trauma initiated an abnormal stimulus to decedent’s sympathetic nervous system which controls the blood supply and nutrition to the skin and calla-gen tissues, depriving these tissues of their blood supply and causing them to “shrink up”. Dr. Stubbs conceded, however, that in medical schools the exact cause of scleroderma is taught as being unknown. It is Dr. Stubbs’ personal theory that trauma is one of the possible causes. He also acknowledged that more often than not, trauma will not cause scleroderma to develop.
It is well settled that in a workmen’s compensation case plaintiff must establish essential elements of his cause by *191 a preponderance of evidence. Meyers v. Employers Liability Assurance Corp., 176 So.2d 658 (La.App. 1st Cir. 1965).
In the case at hand not only has plaintiff failed in this respect but, on the contrary, the record before us overwhelmingly preponderates in favor of the conclusion that the etiology of scleroderma is unknown ■ to the medical profession. It further appears by a predominance of expert testimony that the more informed members of the medical profession are of the view that scleroderma is neither caused nor aggravated by trauma.
Accordingly, the judgment of the trial court is affirmed, all costs of this appeal to be paid by appellants.
Affirmed.