STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-1300


LIONEL WHITMORE

VERSUS

LOUISIANA HYDRO-ELECTRIC


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 02
PARISH OF RAPIDES, NO. 03-01440
HONORABLE JAMES L. BRADDOCK,
WORKERS' COMPENSATION JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and J. David Painter, Judges.

**AFFIRMED.**



Maria A. Losavio
P.O. Box 12420
Alexandria, LA 71315
Counsel for Plaintiff-Appellant,
        LIONEL WHITMORE


Scott Zimmer
P.O. Box 22260
Shreveport, LA 71120
Counsel for Defendant-Appellant,
        LOUISIANA HYDRO-ELECTRIC

**PAINTER, Judge**.

Claimant alleged he contracted a rare disease from exposure to Endura-Bond when new flooring was installed in his work area. The Workers' Compensation Judge (WCJ) found that Claimant failed to prove a work-related accident or occupational disease and failed to prove a causal relationship between his disease and exposure to any chemical substance. Finding no error on the part of the WCJ, we affirm.

**Facts and Procedural History**

This is a claim by Lionel Whitmore for workers' compensation benefits for his contraction of scleroderma, a rare autoimmune disease where the body attacks the connective tissue, alleged to have been caused by his exposure to epoxy glue used in the installation of new flooring in his work area. Whitmore worked at the Louisiana Hydro-Electric Plant in Vidalia, Louisiana for fourteen years. In the fall of 2001, he was working in the control room as a plant operator on the night shift from 6:00 p.m. to 6:00 a.m. The control room is below ground. At that time, Louisiana Hydro-Electric contracted with J&J Flooring to install a new hard surface flooring on the existing raised floor in the control room where Whitmore worked.[1] The job took approximately three to four weeks. Employees of Louisiana Hydro-Electric removed approximately 30 panels at a time by unscrewing them and the J&J employees then brought the panels to their warehouse where they stripped the carpet off, put on the new flooring, and let the adhesive cure. Once that process was completed, they would return the panels and the Hydro-Electric employees would screw them back into place, and 30 more panels would be taken by the J&J employees. The flooring used was

---

[1]The sub-floor in the control room is a raised panel floor because all of the wiring for computers, controls, air conditioning, etc., run under the floor. The panels were covered by carpet.

Endura Rubber Flooring and the adhesive used was Endura-Bond epoxy adhesive. Whitmore testified that the only day he saw J&J employees actually using the adhesive inside the control room was the day he stopped by the plant on the way to his hunting camp. He stayed about thirty minutes on that occasion to visit with some friends who worked the day shift.

Whitmore contends that during the installation of the new flooring, he was continuously exposed to toxic fumes from the epoxy glue used to fasten down the rubber tiles. He further contends that he was not given a mask or respiratory protection of any kind and that he could not escape the fumes because he was required to stay posted in the control room during his 12-hour shifts.

Whitmore testified that immediately following the alleged exposure, he experienced headaches, a runny nose, left shoulder and hip pain. He did not relate the shoulder and hip pain as being caused by the exposure at that time and dismissed them as pulled muscles because he was an avid hunter and fisherman. He did not seek any medical attention until February of 2003 when his left hand started swelling. His local physician, Dr. Mayeaux, referred him to Dr. Shbeeb, a rheumatologist, when his blood work was abnormal. Medical evidence indicates that Whitmore had been on thyroid medication for four to five years prior to this incident. Dr. Shbeeb diagnosed scleroderma and referred Whitmore to Dr. Bustamante, who in turn sent him to Dr. Kevin McKinley, who has been treating him ever since. Whitmore alleges that he has been completely and totally disabled since May 26, 2002, which was his last day on the job.

The parties stipulated that Whitmore was employed by Louisiana Hydro-Electric during the relevant time periods. The parties also stipulated as to Whitmore's average weekly wage.

Following a trial on the merits, Workers' Compensation Judge Braddock dismissed Whitmore's claims and assessed all costs to him. Judge Braddock specifically noted that he was impressed with the testimony of the defense expert, Dr. William Nassetta, over that of plaintiff's expert, Dr. Richard Silver, and his treating physician, Dr. Kevin McKinley. Judge Braddock also noted that all experts agreed that the etiology or cause of scleroderma is unknown. Accordingly, Judge Braddock found that Whitmore failed to prove by a reasonable probability that he suffered from an occupational disease as the result of any exposure to Endura-Bond. Judge Braddock further held that, even if the exposure to Endura-Bond was considered to be an accident, Whitmore had shown merely a speculation and conjecture based on incomplete scientific data of a causal relationship between his scleroderma and his exposure to any chemical substance. This appeal by Whitmore followed.

**Discussion**

Even though Whitmore raised seven assignments of error, the sole question before this court is one of fact; namely: Has claimant established by a preponderance of the evidence that his scleroderma was caused by the alleged exposure to Endura-Bond?

Factual findings in a workers' compensation case are subject to the manifest error standard of review. *Banks v. Industrial Roofing & Sheet Metal Works*, 96-2840 (La. 07/01/97), 696 So.2d 551. This court does not decide whether the findings are right or wrong, but whether they are reasonable. The fact finder's choice between two permissible views on the evidence cannot be clearly wrong. *Id*. Even though this court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should

not be disturbed upon review where conflict exists in the testimony. *Stobart v. State, though DOTD*, 617 So.2d 880 (La.1993) citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989). If the trier of fact's findings are reasonable in light of the record reviewed in its entirety, this court may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id*. at 883.

Dr. Kevin McKinley, Whitmore's treating neurologist, testified by deposition that it was his opinion that it is "most probable that this potentially toxic exposure triggered" Whitmore's illness and that he did not think Whitmore would have developed scleroderma had he not been exposed to the environment in which he was working. Dr. Richard Silver, Whitmore's expert rheumatologist, also testified via deposition. It was his opinion that there is an overall sense that scleroderma occurs in people who may have genetic susceptibility to it and that something in the environment triggers it. In this case, Dr. Silver was "suggesting that the chemical exposure at his work was the trigger that led to his development of systemic sclerosis." On the other hand, Dr. William Nasetta, defendant's expert in internal and occupational medicine, testified that the specific chemicals in Endura-Bond have never been shown in any studies to be associated with the onset of scleroderma.

Here the workers' compensation judge was presented with two permissible views as to the causation of scleroderma in Whitmore. He indicated that he was impressed with the testimony of Dr. Nasetta over that of Dr. Silver, in part because Dr. Silver had never examined or interviewed Whitmore and Dr. Silver was not aware of the procedure used in laying the flooring in this case (i.e., that the primary application of the epoxy resin to the flooring took place outside of the control room) or of how long Whitmore may have been exposed.

*Fitch v. LT&W Drilling Corp.*, 224 So.2d 187 (La.App. 1 Cir. 1969), is the only reported workers' compensation case in Louisiana dealing with scleroderma. Fitch alleged that an accident occurred when he was drilling a well and suffered a severe strain in his arms and shoulders. He was treated for tenosynovitis and during the course of this treatment, was diagnosed with gout and scleroderma. Fitch alleged the accident either caused or aggravated the scleroderma. Defendants conceded that Fitch was totally and permanently disabled because of scleroderma but argued that said condition pre-existed the alleged accident and neither resulted from nor was exacerbated by the alleged accident. The first circuit found that this was not a compensable injury and that Fitch failed to prove his case by a preponderance of the evidence in light of the facts that the etiology of scleroderma is unknown and that the "informed members of the medical profession" were of the view that scleroderma is neither caused nor aggravated by trauma.

With respect to Whitmore's first, second, and third assignments of error, the findings of the workers' compensation judge that there was no accident or occupational disease and that claimant had failed to prove causation were not manifestly erroneous in light of the facts that all experts agreed that the cause of scleroderma is unknown and that Whitmore's own experts could only say that the alleged exposure probably triggered the autoimmune response. Having found that Whitmore failed to meet his burden of proof, the remaining assignments of error are moot with the exception of the allegation that the workers' compensation judge erred in excluding a 2002 report from the British Medical Association entitled "Systemic Sclerosis and Occupational Risks Factor: A Case Control Study." On cross-examination of Dr. Nasetta, Whitmore's counsel attempted to introduce the afore-mentioned article and counsel for the defense objected. Judge Braddock sustained the

objection. Counsel for Whitmore did not attempt to have Dr. Nasetta identify the article as reliable authority and stopped her questioning with regard to the article. She did, however, proffer the article.

On May 27, 2004, a hearing was held on Plaintiff's Motion to Reopen for Additional Evidence. Plaintiff sought to introduce an affidavit from Dr. Silver and the excluded article. The workers' compensation judge denied Plaintiff's motion based on the finding that Plaintiff did not ask to leave the record open for additional evidence at the close of trial and that Plaintiff had not shown that this article was unavailable or non-discoverable prior to trial or in connection with the deposition of Dr. Silver which was taken on January 19, 2004.

With respect to this issue, there is no error in the workers' compensation judge's finding. The decision whether to reopen case for production of additional evidence rests within discretion of trial court, whose discretion will not be disturbed on appeal unless manifestly erroneous. La.Code Civ.Pro. art. 1632. A trial court should not hesitate to reopen a case for the taking of additional evidence to prevent a miscarriage of justice. *Brown v. Hobson*, 30,131 (La.App. 2 Cir. 11/21/98), 706 So.2d 1030, *writ denied*, 98-0479 (La. 04/03/98), 717 So.2d 1132. However, in this case, we find no miscarriage of justice has occurred for the following reasons.

Medical treatises cannot be admitted as independent evidence of the opinions expressed in them. *Oalmann v. Brock & Belvins Co., Inc.*, 428 So.2d 892 (La.App. 1 Cir. 1983). They are objectionable on the grounds hearsay because they are extra-judicial, unsworn dases by persons not available in court for cross-examination. *Id.* at 893. In this case, Plaintiff abandoned the attempt to cross-examine Dr. Nassetta on the article in question after she was unable to lay a proper foundation to do so. Finding that the article was inadmissible, it was not error for the trial court to deny

Plaintiff's Motion to Re-Open for its admission. The trial judge correctly pointed out that the article was published in August 2002 and there was no allegation that it was either unavailable or undiscoverable prior to the deposition of Plaintiff's expert in January of 2004. Plaintiff had the opportunity to present this article at the appropriate time (when his expert was deposed) and had the opportunity to cross-examine Defendant's expert on it but failed to lay a proper foundation. Furthermore, Dr. Nasetta testified that this article dealt with a different chemical than the one to which Whitmore claimed to be exposed. Therefore, Plaintiff failed to demonstrate that the exclusion of this article was prejudicial.

Decree

For the foregoing reasons, the judgment appealed from is affirmed at appellant's cost.

**AFFIRMED.**