|,WILLIAMS, Judge.
The claimant, Andrew Lawrence, Jr., appeals a judgment in favor of the defen *751 dants, United Parcel Service, Inc. (“UPS”) and Liberty Mutual Insurance Company (“Liberty Mutual”). The workers’ compensation judge (WCJ) denied claimant’s request for permanent total disability benefits. For the following reasons, we affirm.
FACTS
The parties stipulated that in February 1990, the claimant sustained an injury arising in the course of his employment as a package driver for UPS. Claimant injured his lumbar spine when he slipped and fell while delivering packages. After a period of conservative treatment, claimant was sent for therapy at the Liberty Mutual Back Institute in Boston, Massachusetts. In July 1992, claimant underwent back surgery performed by Dr. Thomas Whitec-loud at Tulane Hospital. Dr. Whitecloud removed herniated discs at the L4-5 level, fused claimant’s spine and attached a steel device to the spinal vertebrae. During a ten-year period from February 12, 1990 through February 22, 2000, Liberty Mutual, as the workers’ compensation carrier for UPS, paid claimant 520 weeks of benefits.
In 1991, claimant was treated by Dr. Paul Ware, a psychiatrist, who diagnosed claimant with depression secondary to his back injury and prescribed anti-depressant medication. In 1994, claimant saw George Hearn, Ph.D., a licensed psychologist and vocational consultant, who conducted a vocational evaluation of the claimant. Dr. Hearn administered psychological tests and interviewed claimant regarding his education, work history and complaints of chronic pain and depression related to his injury. [ 2 Hearn recommended psychotherapy, rehabilitation counseling and work hardening. Hearn re-evaluated claimant in 2001 and opined that he could not perform any job on a consistent basis.
In 1996, the defendants referred the claimant to a rehabilitation counselor, Ron Mayeux, Ph.D., who reported that claimant possessed good verbal skills, but was a difficult client. In July 1998, Dr. Phillip Osborne performed a Functional Capacity Evaluation (FCE) of claimant. Based on the results, Dr. Osborne opined that claimant demonstrated good strength with some endurance problems, and that he was capable of performing almost any job in the sedentary, light or medium categories for a normal eight-hour work day. Following the FCE, Dr. Mayeux submitted several Department of Transportation (DOT) job descriptions to claimant’s surgeon, Dr. Whitecloud, for an assessment of claimant’s ability to perform the required duties. Dr. Whitecloud approved the jobs of auto salesman, retail business manager and transport driver, if limited to not more than one hour of continuous driving.
In 1999, claimant began seeing Dr. Roland Ponarski, a family practitioner in Rayville, Louisiana. Dr. Ponarski treated claimant for chronic back pain related to his 1990 work injury and for diabetes. Dr. Ponarski prescribed pain relief medication.
In February 2000, the defendants terminated workers’ compensation benefits to claimant. Subsequently, claimant filed a claim with the Office of Worker’s Compensation (OWC) seeking permanent and total disability benefits. At the OWC hearing, the claimant acknowledged that after his 13injury, he had occasionally helped out in his wife’s cigarette store over a period of eight years, performing such duties as operating the cash register, assisting customers and making bank deposits. Defendants introduced into evidence surveillance videos, which showed claimant performing various physical activities, such as lifting and moving shelves with another person at the store and carrying sheets of tin at his fishing camp.
*752 The WCJ issued reasons for judgment finding that claimant’s physicians had approved his return to work at the sedentary or medium duty level, that claimant had performed job duties at his wife’s store and had failed to comply with rehabilitation efforts by declining to enroll in vocational school or to participate in physical therapy. The WCJ noted that the surveillance videos demonstrated claimant’s ability to work and opined that the claimant’s request for permanent total disability benefits, when considered with his activity shown in the video, was “tantamount to fraud.” The WCJ rendered judgment denying claimant’s request for permanent and total disability benefits. The claimant appeals the judgment.
DISCUSSION
In one assignment of error, the claimant contends the WCJ erred in finding that profits derived from his wife’s store constituted earnings of the claimant and disqualified him from receiving permanent total disability (PTD) benefits. For the purposes of our discussion, we will assume that the claimant was not engaged in any employment or self-employment. The claimant also contends the WCJ erred in denying him PTD benefits.
A claimant is entitled to receive workers’ compensation benefits for |4any injury which produces permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or similar occupation as that in which the worker was engaged when injured. LSA-R.S. 23:1221(2)(a). PTD benefits shall not be awarded if the claimant is engaged in any employment or self-employment. LSA-R.S. 23:1221(2)(b). When the employee is not engaged in any employment or self-employment, PTD compensation shall be awarded only if the employee proves by clear and convincing evidence that the employee is physically unable to engage in any employment or self-employment, including any and all odd-lot or sheltered employment or while working in pain. LSA-R.S. 23:1221(2)(e).
In the present case, the claimant testified that he continued to feel back pain at the time of trial and that he could not stand or sit for extended periods. Claimant stated that he occasionally helps at his wife’s store by operating the cash register, stocking shelves, assisting customers and making store bank deposits. Claimant testified that he is physically able to perform these cashier duties for two or three days in a row, for up to eight hours per day, because he is able to sit or stand as needed.
The claimant acknowledged that he had engaged in the physical activities depicted in the surveillance videos, such as lifting and loading large display shelves onto a truck with another person, unloading plywood from a trailer and climbing a ladder to attach a tin roof to his fishing cabin. Claimant stated that he had been able to climb up into a fixed stand to hunt deer and had driven eight hours in a day during a trip to Colorado. Claimant |r,explained that participating in such physical activity increased his back pain and required him to spend the next day or two lying down to rest and relieve the pain, preventing him from doing any other activities.
The July 1998 FCE results showed that claimant had completed the cardiovascular endurance test, but with a poor recovery, indicating that he was deconditioned. The claimant was able to do a 115 pound squat lift, a 53 pound dead back lift and frequent lifting of 31 pounds with adequate grip strength. Dr. Osborne wrote that claimant’s endurance problems could be improved with a reconditioning program. Dr. Osborne opined that even with limited *753 endurance, claimant would be able to perform sedentary or light duty work if restricted to a maximum lift of - 50 pounds and frequent lifting of 25 pounds, with occasional bending, squatting and kneeling. Dr. Osborne estimated that claimant could sit or stand for two hours before taking a break and could work a normal eight-hour day.
In 1997, Dr. Whiteeloud recommended that claimant attend additional physical therapy and in February 1998, he prescribed work hardening to improve claimant’s condition. However, claimant did not comply with either instruction. In February 1999, Dr. Whiteeloud approved the jobs of auto salesman and retail store manager as within claimant’s physical abilities. He also approved the job of transport driver if claimant was not required to drive continuously for over one hour.
Despite the evidence that he is capable of performing sedentary or light duty work with some restrictions, claimant argues that his physical limitations, combined with his psychological and emotional problems and | (¡his lack of education render him unemployable with poor prospects for rehabilitation.
LSA-R.S. 23:1226(D) provides that prior to the adjudication of an injured employee as permanently totally disabled, the WCJ shall determine whether there is a reasonable probability that with appropriate training or education, the employee may be rehabilitated to the extent that he can achieve suitable gainful employment and whether it is in the individual’s best interest to undertake such training or education. The supreme court has stated that the requirement of R.S. 23:1226 must be construed in pari materia with R.S. 23:1221(2), which defines permanent total disability. Comeaux v. City of Crowley, 01-0032 (La.7/3/01), 793 So.2d 1215.
In support of his contention that he is permanently disabled, claimant presented the deposition testimony of Dr. George Hearn, who testified that he conducted vocational evaluations of claimant in January 1994 and September 2001. Hearn administered vocational and psychological testing to evaluate claimant’s intellectual capacity, academic ability and personality factors. Hearn stated that claimant demonstrated a limited education, with reading and math skills at the sixth grade level. Hearn opined that this limited education could make it more difficult for claimant to pursue many vocational training opportunities requiring a certain amount of reading. Hearn stated that the claimant’s psychological tests indicated moderate depression, which if not treated, could impair his interaction with others and reduce his chance for rehabilitation. Given claimant’s pain, academic level and psychological status, Dr. Hearn opined that claimant was not j 7employable in any job on a consistent basis.
However, Hearn acknowledged that positive factors for claimant’s rehabilitation were that he was relatively young at 49 years old and that he possessed the intelligence to improve his academic performance. Hearn stated that he would “strongly encourage” rehabilitation to enhance claimant’s educational level through the GED program. Hearn agreed that enrolling in a vocational technical school would “definitely” help to broaden claimant’s marketable job skills. He acknowledged that the claimant needed to put forth some effort himself along with the vocational assistance to return to the job market. Hearn also agreed that claimant ought to try physical therapy and work hardening to increase, his endurance and improve his emotional state.
In his deposition, Dr. Ronald Mayeux testified that he first met with claimant in *754 May 1996 and administered an occupational preference test. Mayeux recommended that claimant enroll in vocational technical school for retraining and contacted the Northeast Louisiana Vocational Technical College in Winnsboro, where claimant resided. Although Mayeux believed that vocational training was a more realistic option at the time, he agreed that claimant should enroll in a GED program because of his expressed interest in attending college. Mayeux testified that claimant never enrolled in either the vocational school or the GED program.
Mayeux stated that he received claimant’s medical information from Dr. Whitec-loud, who had recommended that claimant participate in physical therapy and work hardening. Mayeux located the North Louisiana ^Rehabilitation Hospital (NLRH) in Ruston and contacted claimant, who toured the facility. Mayeux stated that claimant insisted on attending physical therapy at the Liberty Mutual facility in Boston, but the insurer denied this request. Mayeux testified that he conducted a labor market survey to find jobs that would fit within claimant’s physical restrictions.
The claimant testified that he told May-eux that he wanted a job with a salary equal to his wage at UPS. Claimant stated that he was unable to do algebra or geometry, but could multiply and read a newspaper. He testified that he requested therapy in Boston because the Liberty Mutual Center seemed like a better facility than the NLRH. Claimant acknowledged that he never tried to enroll in vocational technical school or in a GED program and did not attempt physical therapy at NLRH. Claimant testified that when he was in pain, he sometimes felt depressed and was irritable, impatient and did not get along with others.
In March 1991, Dr. Paul Ware, a psychiatrist, performed a psychiatric evaluation of claimant. Dr. Ware diagnosed claimant as having adjustment disorder of adulthood with depressed mood. Dr. Ware reported that claimant expressed symptoms of clinical depression and prescribed antidepressant medication. Dr. Ware opined that claimant’s depression would respond to supportive therapy and medication.
The claimant contends the Comeaux case required the WCJ to consider a number of factors in addition to physical limitations in the determination of his PTD status, including age, literacy, skills, experience, likelihood of rehabilitation and psychological condition. However, contrary |flto claimant’s contention, in Comeaux, the supreme court expressly declined to extend to permanent total disability cases the “totality of factors” standard stated in Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993), which addressed supplemental earnings benefits. Rather, the supreme court stated that the issue of whether or not claimant had successfully attempted the rehabilitation required by R.S. 23:1226 was a proper factor to consider along with physical incapacity in deciding claimant’s disability status.
Claimant argues that given his symptoms of chronic pain, depression and his limited academic ability, he is effectively incapable of being educated or retrained and could not successfully attempt rehabilitation. However, the expert witness testimony does not support claimant’s argument. Dr. Hearn opined that at the time of his evaluation, claimant was unable to perform even sedentary work on a consistent basis. Nevertheless, Dr. Hearn testified that he would encourage rehabilitation to enhance claimant’s educational level and that claimant possessed the intelligence to improve his academic skills. Additionally, although Dr. Ware opined that claimant showed symptoms of depression, he did not indicate that claimant’s condition *755 would prevent him from working. To the contrary, Dr. Ware stated that claimant’s condition should respond to treatment.
The evidence presented demonstrates that the defendants’ vocational rehabilitation consultant, Dr. Mayeux, offered claimant the opportunity to attend vocational technical school and to participate in physical therapy at a local facility. However, the claimant failed to enroll in a vo-tech school or ajjjGED program and refused to attend physical therapy at NLRH, despite the recommendation of his treating physician. Thus, unlike the injured worker in the Comeaux case, claimant cannot show that he attempted rehabilitation and was unsuccessful. To the contrary, the testimony suggested that the claimant would have benefitted from vocational training and physical therapy if he had made a reasonable effort. Nor did claimant show that his depression was so severe as to prevent him from participating in rehabilitation or from performing strenuous activities when he so chose.
Based upon this record, the WCJ could reasonably have found that claimant failed to establish by clear and convincing evidence that he was physically unable to perform any employment, including while working in pain, and that claimant failed to cooperate with reasonable rehabilitation efforts. Consequently, we cannot say the WCJ was clearly wrong in denying PTD benefits to the claimant. The assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the judgment of the Office of Workers’ Compensation is affirmed. Costs of this appeal are assessed to the claimant, Andrew Lawrence.
AFFIRMED.