| PEATROSS, J.
In this workers’ compensation case, the workers’ compensation judge (‘WCJ”) entered judgment finding that the claimant, James E. Jones, is totally and permanently disabled and finding that his employer, Walpole Tire Service, Inc. (“Walpole”), was entitled to a reverse offset for social security benefits paid to Mr. Jones in the amount of $719 per month or $165.92 per week. The judgment was silent as to costs. Mr. Jones appeals, challenging the amount of the reverse offset and the failure to award him costs. Walpole has answered the appeal, challenging the WCJ’s finding of total and permanent disability. For the reasons stated herein, we amend the judgment of the WCJ and, as amended, affirm.

FACTS

On August 1, 1994, Mr. Jones sustained an injury to his neck when he lifted a 125-pound tire while working for Walpole. It is not disputed that he was injured in the scope and course of his employment and that he received supplemental earnings benefits (“SEBs”) in the amount of $213.44 per month based on his stipulated average weekly wage of $360.[1] In March 2002, Mr. Jones filed a disputed claim for compensation requesting that his status be changed to permanent total disability (“PTD”). Two hearings were held, the first of which addressed his disability status, with the second concerning Walpole’s entitlement to a social security reverse offset for social security benefits paid to Mr. Jones. As previously stated, the WCJ found Mr. Jones | ¡¡to be permanently and totally disabled and awarded a reverse offset for social security benefits.

DISCUSSION

The entitlement to the reverse offset is not disputed, only the amount of the re *930 verse offset is challenged by Mr. Jones, along with the WCJ’s failure to award costs. In answer to the appeal, Walpole challenges the WCJ’s finding that Mr. Jones is permanently and totally disabled. We will first address the issue of Mr. Jones’ disability status raised in Walpole’s answer to the appeal.

Permanent Total Disability

La. R.S. 23:1221(2)(c) provides:
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subpar-agraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
A claimant is entitled to receive workers’ compensation benefits for any injury which produces permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or similar occupation as that in which the worker was engaged when injured. La. R.S. 23:1221(2)(a). PTD benefits shall not be awarded if the claimant is engaged in any employment or self-employment. La. 13R.S. 23:1221(2)(b). When the employee is not engaged in any employment or self-employment, PTD compensation shall be awarded only if the employee proves by clear and convincing evidence that the employee is physically unable to engage in any employment or self-employment, including any and all odd-lot or sheltered employment or while working in pain. La. R.S. 23:1221(2)(c).
La. R.S. 23:1226(D) provides that, prior to the adjudication of an injured employee as permanently totally disabled, the WCJ shall determine whether there is a reasonable probability that, with appropriate training or education, the employee may be rehabilitated to the extent that he can achieve suitable gainful employment and whether it is in the individual’s best interest to undertake such training or education. The supreme court has stated that the requirement of La. R.S. 23:1226 must be construed in pan materia with La. R.S. 23:1221(2), supra, which defines permanent total disability. Comeaux v. City of Crowley, 01-0032 (La.7/3/01), 793 So.2d 1215.
Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the hearing officer. Pugh v. Casino Magic, 37,166 (La.App.2d Cir.4/11/03), 843 So.2d 1202. Factual findings in workers’ compensation cases are subject to the manifest error rule. Id., citing Smith v. Louisiana Department of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129. Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. If the WCJ’s findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse, even if convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks, supra; Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Graham v. Georgia-Pacific Corporation, 26,165 (La.App.2d Cir.9/23/94), 643 So.2d 352.
*931 The manifest error standard accords great deference to the hearing officer, for, as fact finder, the hearing officer is in the superior position to assess the demeanor and tone of voice that are crucial to the issue of credibility. Rosell v. ESCO, 549 So.2d 840 (La.1989). The hearing officer’s decision to credit the testimony of one of two or more witnesses can virtually never be plainly wrong. Id.
In the case sub judice, Walpole argues that Mr. Jones failed to carry his burden of proving by clear and convincing evidence that he is permanently and totally disabled. In support, Walpole points to the testimony of Danielle Montgomery, a vocational expert, who testified on its behalf. Ms. Montgomery testified that Mr. Jones is capable of performing such jobs as a poultry worker, technician at a sink manufacturer, a press operator, photo developer or positions at fast food restaurants. According to Walpole, Ms. Montgomery’s opinion that Mr. Jones is able to perform these jobs disqualifies him from an award of permanent total disability. In addition, Walpole cites the court to the testimony of Mr. Jones’ treating physician, Dr. Kalia Sadasivan, in support of its argument that he could |swork within certain restrictions. Walpole also notes that Mr. Jones is taking no medication for pain and there is no evidence that he cannot be further educated or trained. After reviewing the testimony and the WCJ’s thorough reasons for judgment, however, we find no manifest error in the WCJ’s conclusion that Mr. Jones is permanently and totally disabled.
Dr. Sadavisan testified that, after his work-related neck injury, Mr. Jones was experiencing severe pain from spasms in his neck and was unable to perform any activity in his upper extremities that involved lifting or pushing. It was Dr. Sada-visan’s opinion that arthritis had formed in Mr. Jones’ cervical spine as a result of the trauma to that area from the injury. In September 2000, Mr. Jones underwent a posterior cervical fusion with an iliac crest bone graph (a fusion of two cervical verta-brae, C2 and C3). Dr. Sadavisan explained that the surgery decreased the range of motion in Mr. Jones’ neck, but did alleviate the pain “as long as he’s not active, lifting, pushing or even performing the simplest of daily living activities.” Dr. Sadavisan further explained that activity brings pain to Mr. Jones even after the surgery. In Dr. Sadavisan’s opinion, Mr. Jones’ condition is permanent and he is totally unable to perform any job that would require lifting objects weighing more than 15 pounds. She further testified that Mr. Jones should limit twisting his neck, turning his head from side to side or any neck rotation and he should avoid vibration. Specifically, Dr. Sadavisan testified that Mr. Jones could not use power tools and should avoid pushing or pulling heavy objects.
IfiMr. Jones testified that he is unable to perform even simple daily activities, such as household chores and picking up children. He testified that he is in pain if he looks up, down or turns his head from side to side. We find that this testimony supports the WCJ’s reasonable conclusion that Mr. Jones is willing to perform work activities “but he is unable to do so because of the condition of his neck.”
Another factor considered by the WCJ in this case is that Mr. Jones is functionally illiterate. While he can recognize some words, he cannot read or write. Mr. Jones was 43 years old at the time of the hearing in this case and had been educated, in special education classes, through the tenth grade. Since he is unable to read and write, Mr. Jones’ employment was in manual labor, and, for the same reason, he is not a candidate to obtain a G.E.D. More *932 over, testing conducted during the rehabilitation process indicated that he has a mild mental handicap. This evidence of Mr. Jones’ lack of- ability to be educated or retrained was properly considered by the WCJ in determining whether Mr. Jones satisfied his burden of proving his incapacity to perform any work. See Comeaux, supra.
Regarding the vocational rehabilitation efforts of Mr. Jones, the WCJ specifically stated that she made a credibility determination regarding Ms. Montgomery’s testimony. The WCJ was not at all impressed with Ms. Montgomery’s efforts to rehabilitate Mr. Jones. The vocational rehabilitation expert who testified for Mr. Jones, Lanora Matouk, on the other hand, was found to be very credible by the WCJ and opined that there are no jobs in his geographical area that Mr. Jones is able to perform. Ms. Matouk researched the jobs identified by Ms. Montgomery as within Mr. Jones’ capability and testified that each of the jobs either required lifting or reading and writing or other activity outside of Mr. Jones’ restrictions.
In summary, we find that the WCJ correctly addressed and, in her discretion, weighed the various factors to be considered in determining the level of Mr. Jones’ disability. The WCJ properly assessed Mr. Jones’ medical condition, his ability to be further educated or trained and the unsuccessful attempt at rehabilitation and reasonably concluded that these factors support a finding that Mr. Jones is entitled to permanent total disability benefits. Co-meaux, supra. This reasonable conclusion is neither clearly wrong nor manifestly erroneous and will not be disturbed on appeal.

Social Security Reverse Offset

La. R.S. 23:1225(A) provides as follows:
§ 1225. Reductions when other benefits payable
A. The benefits provided for in this Subpart for injuries producing permanent total disability shall be reduced when the person receiving benefits under this Chapter is entitled to and receiving benefits under 42 U.S.C. Chapter 7, Subchapter II, entitled Federal Old Age, Survivors, and Disability Insurance Benefits, on the basis of the wages and self-employment income of an individual entitled to and receiving benefits under 42 U.S.C. § 423; provided that this reduction shall be made only to the extent that the amount of the combined federal and workers’ compensation benefits would otherwise cause or result in a reduction of the benefits payable under the Federal Old Age, Survivors, and Disability Insurance Act pursuant to 42 U.S.C. § 424a, and in no event will the benefits provided in this Sub-part, together with those provided under the federal law, exceed those |sthat would have been payable had the benefits provided under the federal law been subject to reduction under 42 U.S.C. § 424a. However, there shall be no reduction in benefits provided under this Section for the cost-of-living increases granted under the federal law after the date of the employee’s injury.
The WCJ awarded a reverse offset in the amount of $719 per month or $165.92 per week. This award comports with the calculation submitted to the WCJ by counsel for Walpole prior to the rendition of the judgment. As previously stated, Mr. Jones does not contest Walpole’s entitlement to a reverse offset under the above statute. He argues, however, that it is the employer’s'burden to prove the amount of the offset to which it is entitled and Walpole failed to do so.
*933 First, we find unpersuasive Mr. Jones’ argument that the WCJ erred in relying on the documentation from the Social Security Administration. Walpole submitted to the WCJ Social Security Administration form LDOL-WC-1004 which contained benefit information for Mr. Jones. The WCJ subsequently requested additional information from the Social Security Administration and received the same Form 1004 with additional notations. It is well-settled that evidentiary rules are relaxed in workers’ compensation cases. Chaisson v. Cajun Bag & Supply Company, 97-1225 (La.3/4/98), 708 So.2d 375. In Chaisson, the supreme court explained:
LSA-RS 23:1317 mandates that the hearing officer’s factual findings be based on “competent evidence.” La. Rev.Stat. Ann. 23:1317(A) (West Supp. 1997). This legislative mandate is necessary because under the express language of LSA-RS 23:1317, worker’s compensation hearing officers are “not bound by the technical rules of evidence.” Id. In other words, the hearing officer has the discretion to admit evidence that would otherwise be inadmissible under the Louisiana Code of [ 9Evidence. This more relaxed standard for the admissibility of evidence is the general rule in proceedings before administrative agencies. McCormick on Evidence § 352 (4th ed.1992). The legislative requirement that a hearing officer’s factual findings be based upon competent evidence is the safeguard that ensures that the factual findings are made on evidence that has some degree of reliability and trustworthiness, notwithstanding that the evidence might fall outside of the technical rules for admissibility. Therefore, when a reviewing court evaluates the factual findings of a hearing officer under the manifest error standard, it must determine whether the factual findings are reasonable and supported by competent evidence in the record. Although the Legislature has not defined “competent evidence,” in order to give the relaxed evidentiary standard in LSA-RS 23:1317 effect, it must not be defined so narrowly as to mean only evidence that would fall within the parameters of the Louisiana Code of Evidence. If the hearing officer’s factual findings are reasonably supported by competent evidence, then the reviewing court must affirm them.
The WCJ in the instant case made the factual findings of the amounts to be utilized in calculating the reverse offset based on the information contained in Form 1004 provided to the WCJ directly by the Social Security Administration. We find this to be competent evidence and, therefore, find no error in the WCJ relying on this information.
We now turn to the calculation of the reverse offset. In Beaird Industries, Inc. v. Ebarb, 29,300 (La.App.2d Cir.2/26/97), 690 So.2d 866, this court endorsed the formula for calculating the reverse offset under La. R.S. 23:1225 as set forth in Lofton v. Louisiana Pacific Corporation, 423 So.2d 1255 (La.App. 3d Cir. 1982) and Kliebert v. Arceneaux Air Conditioning, Inc., 439 So.2d 486 (La.App. 1st Cir.1983). The offset is determined by adding the total family benefits (“TFBs”) received from Social Security (before any offset has been taken by Social Security) and the employee’s monthly workers’ compensation benefits and then subtracting | infrom the result either the TFB or 80% of the average current earnings (“ACE”) (a figure calculated by Social Security), whichever is greater. Lofton, supra. See also Manino v. Ten (10) Minute Oil Change, 02-0459 (La.App. 4th Cir.8/21/02), 828 So.2d 608, citing Denis Paul Juge, *934 Louisiana Workers’ Compensation § 12:4 (2d ed.2002). The court in Manino stated:
Explaining the purpose of La. R.S. 23:1225, the court in Lofton stated that it was intended “to give the compensation carrier, rather than the federal government, the benefit of the ceiling placed on both programs by the coordination of benefits.” 423 So.2d at 1259. Given that statutory purpose, it logically follows that the formula for calculating the reverse offset to which a compensation carrier is entitled under state law should be based, as it would under federal law, on the TFB and ACE figures provided by the Social Security Administration. Given that the Lofton formula is based on those figures, it is consistent with the statutory purpose of the reverse offset. Although it was decided twenty years ago, a commentator has noted that the cases decided following the Lofton decision have not “strayed very far from the tenets of that decision.” 13 H. Alston Johnson III, Malone & Johnson, Louisiana Civil Law Treatise: Workers’ Compensation Law and Practice §§ 289 (2d ed.1994).
The evidence before the WCJ in the case sub judice reveals that Mr. Jones’ TFB was $1,002.90, 80% of his ACE was $1,208.80 and his monthly PTD compensation was $924.90. The reverse offset is calculated as follows:
a. TFB $ 1,002.90
b. 80% of ACE $1,208.80
e. Combined benefits cannot exceed: $ 1,208.80
d. Monthly PTD benefit: $ 924.80
e. TFB ($1,002.90) + PTD ($924.90) = $ 1,927.80
| Ilf. Offset: $1,927.80 - $1,208.80 = $ 719.00
g. Weeldy offset: $719.00 x 3 = $ 165.92 13
As previously stated, Mr. Jones argues that the figures supplied by the Social Security Administration, specifically the TFB and ACE, are inaccurate. No evidence was presented to the WCJ, however, supporting a departure from the figures provided by the Social Security Administration. Accordingly, as shown by the above calculation, we find no error in the WCJ’s conclusion that Walpole is entitled to a reverse offset in the amount of $165.92 per week.

Costs

Finally, Mr. Jones argues that the WCJ erred in failing to award his costs, namely, $400 for Dr. Sadavisan’s deposition, $129.20 for the court reporter at that deposition and Ms. Matouk’s charges associated with the vocational rehabilitation effort in the amount of $1,839.91. We agree.
The judgment in the case sub judice was silent as to costs. In such case, the costs shall be borne by the party cast in judgment. Cajun Elec. Power Co-op. v. Owens-Coming Fiberglass Corp., 580 So.2d 465 (La.App. 5th Cir.1991). Mr. Jones prevailed in the instant matter, with a judgment granting his request to modify his SEBs and finding that he is permanently and totally disabled. The reverse offset awarded Walpole is a statutory entitlement of the employer recognized by the WCJ. We hereby amend the judgment of the WCJ to tax costs in the amount of $2,369.11 to Walpole.
| ^DECREE
For the foregoing reasons, the judgment of the WCJ is amended to tax James E. Jones’ costs in the total amount of $2,369.11, representing the deposition fee for Dr. Sadavisan of $400, the court reporter’s fee of $129.20 for the deposition and the charges of the vocational rehabilitation expert in the amount of $1,839.91 against Walpole Tire Service, Inc. In all other respects, the judgment of the WCJ is affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.

. In an unpublished opinion in a prior appeal of this case, this court reversed a finding of the WCJ and held that Mr. Jones was only entitled to SEBs rather than continued temporary total disability benefits ("TTDs”). Commercial Union Insurance Company and Walpole Tire Service, Inc. v. Jones, 32,533 (La.App.2d Cir. 12/8/99), 761 So.2d 816 unpublished opinion, writ denied, 00-0560 (La.4/7/00), 759 So.2d 763.