895 So.2d 723 (2005)
Kathy D. YOUNG, Plaintiff-Appellee,
v.
PHYSICIANS & SURGEONS HOSPITAL, Defendant-Appellant.
No. 39,348-WCA.
Court of Appeal of Louisiana, Second Circuit.
March 2, 2005.
*724 Lunn, Irion, Salley, et al., by J. Martin Lattier, Shreveport, for Appellant.
Robert M. Hanna, Shreveport, for Appellee.
Before WILLIAMS, MOORE & LOLLEY, JJ.
MOORE, J.
The employer, Physicians & Surgeons Hospital ("P & S"), appeals a judgment awarding the claimant, Kathy D. Young, permanent total disability benefits ("PTD"). For the reasons expressed, we affirm.

Procedural Background
Ms. Young was employed by P & S as a licensed practical nurse. In October 1992 she was trying to lift a patient when she injured her back. Dr. Craig Springmeyer diagnosed a herniated disk at L5-S1 and performed a lumbar laminectomy; because of continued symptoms, in early 1993 he also performed a lumbar fusion. Ms. Young has not worked since the accident. She filed a disputed claim for compensation; in May 1994 the OWC awarded her temporary total disability benefits ("TTD") of $137.60 a week, which P & S has paid since the accident.
In late 2002 both parties filed motions to modify the prior judgment. P & S's motion alleged that she was now entitled to supplemental earnings benefits ("SEB"), based on an independent medical examination by its own orthopedist, Dr. Carl Goodman, finding that her condition has improved. P & S also showed that Ms. Young had received, or was about to receive, 520 weeks of benefits.[1] Ms. Young's motion cited a 1995 surgery to remove screws installed in the earlier fusion and a 2000 laminotomy and fusion. She alleged that her condition had deteriorated and she was now entitled to PTD. Because of *725 her surgeries and constant pain, she also alleged that she was on narcotic pain medication.
After a motion hearing in February 2003, the WCJ denied P & S's motion to modify, reserved Ms. Young's motion pending a full hearing, and ordered her to undergo a functional capacity evaluation.
In June 2003 P & S filed another motion to modify the 1994 judgment. This time it cited the functional capacity evaluation performed by Health South and reports from Drs. Goodman and Robert Holladay (the latter being Ms. Young's choice of orthopedist) that she could return to work. It also reiterated that Ms. Young had received 520 weeks of benefits.
The matter proceeded to a hearing in December 2003 at which Ms. Young and an insurance adjuster for P & S testified. The parties also introduced numerous medical reports and hospital records, including those of the doctors mentioned above and of Dr. Kathleen Majors, Ms. Young's current treating physician. Dr. Majors concluded that because of chronic back and leg pain, along with required narcotic medication, even a sedentary job would not be feasible for Ms. Young. P & S offered the deposition of Ms. Lenora Maatouk, a vocational rehabilitation counselor, who drafted a job description for video surveillance at a casino and felt that Ms. Young could perform that job.
After taking the case under advisement, the WCJ rendered an oral ruling on April 1, 2004, finding that Dr. Majors was the only physician with a true grasp of Ms. Young's condition and current abilities, and concluding that Ms. Young was permanently and totally disabled. The WCJ detailed and roundly criticized P & S's efforts to provide rehabilitation counseling to Ms. Young. A written judgment, rendered April 8, declared Ms. Young to be permanently and totally disabled, formally converted her benefits to PTD, and denied P & S's motion to modify the 1994 judgment. P & S has appealed.

The Parties' Contentions
By one assignment of error, P & S urges the WCJ committed error in finding that Ms. Young was permanently and totally disabled rather than being at SEB status. P & S first argues that the WCJ applied the wrong evidentiary standard, analyzing the case as a claim for SEB under La. R.S. 23:1221(3), rather than under the more stringent standard of a claim for PTD under R.S. 23:1221(2). P & S suggests that this was an error of law, warranting de novo review. Hall v. Folger Coffee Co., XXXX-XXXX (La.4/14/04), 874 So.2d 90. P & S next asserts that the medical experts held such divergent views of Ms. Young's disability status that she could not prove that she was physically unable to engage in any employment, including employment while working in any pain. R.S. 23:1221(2)(c). P & S cites numerous cases in which PTD claims were rejected because of the substantial pain provision of R.S. 23:1221(2)(c).[2]
Ms. Young replies that the WCJ was charged with deciding between the parties' reciprocal motions for modification, and its factual findings are subject to manifest error review. Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161. She urges that the WCJ properly assigned more weight to the opinion of the current treating physician, Dr. Majors, than to those of doctors retained only to *726 examine her once or twice. Mosley v. Pennzoil Quaker State, 37,199 (La.App. 2 Cir. 7/23/03), 850 So.2d 1100, writ denied, 2003-2412 (La.11/21/03), 860 So.2d 553. She concludes that a review of all the evidence, not just the medical reports favorable to P & S, supports the WCJ's findings.

Applicable Law
Permanent total disability is defined in La. R.S. 23:1221(2)(a) as:
[D]isability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience[.]
When the claimant is not employed, the burden of proof is that set forth in La. R.S. 23:1221(2)(c):
For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment * * *, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
The "clear and convincing" standard in a workers' compensation case is "an `intermediate' standard falling somewhere between the ordinary preponderance of the evidence civil standard and the beyond a reasonable doubt criminal standard." Hatcherson v. Diebold Inc., XXXX-XXXX (La.5/15/01), 784 So.2d 1284. To prove a matter by clear and convincing evidence means to demonstrate that the existence of the disputed fact is highly probable, i.e., much more probable than its nonexistence. Mitchell v. AT & T, 27,290 (La.App. 2 Cir. 8/28/96), 660 So.2d 204, writ denied, 95-2474 (La.12/15/95, 664 So.2d 456).
Any award of PTD requires a finding relative to rehabilitation under La. R.S. 23:1226 D:
Prior to the workers' compensation judge adjudicating an injured employee to be permanently and totally disabled, the workers' compensation judge shall determine whether there is reasonable probability that, with appropriate training and education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education.
The role of rehabilitation is not as great in a claim for PTD as in a claim for SEB. Nevertheless, when an attempt at rehabilitation fails, "the employee's lack of ability to be educated or retrained cannot be ignored." Comeaux v. City of Crowley, XXXX-XXXX (La.7/3/01), 793 So.2d 1215.
The same standard of appellate review applicable to factual findings of district courts is also applicable to the factual findings of a WCJ. Dean v. Southmark Const., XXXX-XXXX (La.7/6/04), 879 So.2d 112; Johnson v. Johnson Controls Inc., 38,495 (La.App. 2 Cir. 5/12/04), 873 So.2d 923. Under the manifest error standard, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Dean v. *727 Southmark Const., supra. The manifest error standard applies even when the WCJ's decision is based upon written reports, records or depositions. Bruno v. Harbert Int'l Inc., 593 So.2d 357 (La.1992); Johnson v. Johnson Controls Inc., supra.

Discussion
At the outset, we decline P & S's offer to review the case de novo. Despite the WCJ's frequent references to the standard for an SEB award, the judgment was a factual finding that Ms. Young is permanently and totally disabled. As such, it is subject to manifest error review. Dean v. Southmark Const., supra; Comeaux v. City of Crowley, supra.
We have closely reviewed the extensive medical evidence. Dr. Robert Holladay treated Ms. Young regularly from late 1995 through late 2001 and, according to P & S, is still her choice of orthopedist. As of December 2002, he found that she still had back pain and difficulty with bending and prolonged standing and walking. He advised her to limit her sitting, standing or walking to 30-45 minutes at a time without changing position, but he felt she could do "light duty type work activity," and recommended a functional capacity evaluation. After receiving the results of this evaluation, Dr. Holladay found an absence of muscle spasms, no atrophy in either leg, and normal motor strength. After an MRI in October 2003, he wrote in his office notes that Ms. Young denied any more leg pain, and that her pain medication was helping "some." Dr. Holladay received a letter from Ms. Maatouk, P & S's vocational rehabilitation counselor. In response to whether Ms. Young could work video surveillance at a local casino, he checked "No," adding that she could lift no more than 10 lbs. on an occasional basis.
Dr. Carl Goodman examined Ms. Young twice, in September 1998 and October 2002, on behalf of P & S. He found a "failed fusion" with chronic leg and back pain requiring narcotic medication. Dr. Goodman also answered Ms. Maatouk's letter, checking off "Yes."
Dr. Kathleen Majors was Ms. Young's choice of pain care physician and is her current treating physician.[3] Dr. Majors diagnosed "intractable pain" in the back and lower extremities. She placed Ms. Young on a series of narcotics, including a Duragesic pain patch (equivalent of 500 mg of morphine daily), Oxycontin, Percocet and Relafen; these offered varying levels of relief but all had unpleasant side effects. Dr. Majors has consistently recommended epidural steroid treatments. By mid-2003, she felt Ms. Young's pain was worse, particularly in the right hip. Dr. Majors answered Ms. Maatouk's letter with a "No."
Dr. William Whyte, P & S's choice of pain care physician, examined Ms. Young once for a second opinion in July 2003. He diagnosed failed back surgery syndrome and recommended the epidural steroid injections, but felt she was capable of returning to sedentary work activity which should begin as part-time and graduate to full-time. He cautioned, however, that use of narcotics would limit what she could do. In response to Ms. Maatouk's letter, he checked "Yes."
Lenora Maatouk testified that P & S retained her in April 2003 to evaluate Ms. Young and provide vocational rehabilitation services. Ms. Maatouk had previously placed a client with a foot injury in a video surveillance job at a local casino; after *728 meeting with Ms. Young, she drafted a "generic job description of the positions that had been located in the past several months," sending this "video monitor" description to physicians who had treated or examined Ms. Young. Drs. Holladay and Majors marked "No," while Drs. Whyte and Osborne (the latter performed the functional capacity evaluation at Health South), marked "Yes." She also testified that as of September 12, 2003, one casino had a job opening.
Ms. Young testified at the hearing, relating her four surgeries, long course of treatment and current pain. She said her right leg usually hurts too bad for her to drive; because of leg spasms, she has on occasion fallen and hurt herself worse. She added that household chores, especially sweeping, put her in terrible pain. She disputed many entries in Dr. Holladay's medical records, such as telling him she no longer had leg pain, and could perform the activities of daily living and take care of her grandchildren. She also denied making similar statements to Dr. Goodman, who noted her telling him she was no longer in pain. She disagreed with Dr. Osborne's finding that she could sit or stand up for two hours.
On review we see that Dr. Majors has spent the most time treating Ms. Young since the fourth surgery, attempting to alleviate her debilitating pain with only intermittent success. She was emphatic that Ms. Young could not now work, and offered only a dim prospect that she might ever return to work. Dr. Holladay, who had treated Ms. Young for six years, initially felt she could perform light duty work, yet he refused to approve the video monitor job described by Ms. Maatouk and did not suggest any other employment. Ms. Young described continuous pain, occasionally relieved by narcotics, but felt that the medication would make it difficult for her to work. She lamented that the pain in her lower back and legs impaired her driving and would make it difficult for her to commute to a job regularly. In short, Ms. Young corroborated Dr. Majors's nearly hopeless view of any future employment.
By contrast, of the doctors who approved the video monitor job description, Dr. Goodman had seen Ms. Young twice, and Drs. Whyte and Osborne only once each. Ms. Maatouk met with her only twice, and only once for actual vocational testing. Considering their very limited exposure to Ms. Young, the WCJ was certainly entitled to discount their opinions.
In brief, P & S lists eight instances in which, according to Dr. Holladay's office notes, Ms. Young said she was free of leg pain and spasms, and able to take care of her grandchildren and perform activities of daily living. As noted, Ms. Young disputed these entries. We see no basis to disturb the WCJ's credibility call in favor of Ms. Young, as she admitted the medication provided intermittent pain relief. Notably, Dr. Holladay subsequently refused to approve the job description.
Finally, we observe that the WCJ's long digression regarding Ms. Maatouk's adherence to the Code of Professional Ethics for Licensed Rehabilitation Counselors, 46 La. Admin. C., Pt. 86, §§ 1600 et seq., was apparently gratuitous and largely irrelevant to the ultimate issue of permanent total disability. Once the claimant established her entitlement to PTD under R.S. 23:1221(2), the burden shifted to the employer to prove that rehabilitation was possible. La. R.S. 23:1226; Comeaux v. City of Crowley, supra. The rehabilitative efforts described in this record have been minimal and unsuccessful. The WCJ's judgment encompassing this finding is not plainly wrong. Dean v. Southmark Const., supra.

*729 Conclusion

For the reasons expressed, the judgment is affirmed. Costs are charged to the employer, Physicians & Surgeon's Hospital.
AFFIRMED.
NOTES
[1] This time period, 520 weeks, is the limit for receiving SEB. La. R.S. 23:1221(3)(d). There is no upper limit for receiving TTD.
[2] Lawrence v. United Parcel Serv., 37,554 (La.App. 2 Cir. 9/12/03), 865 So.2d 750; Bank of Winnfield & Tr. Co. v. Collins, 31,473 (La.App. 2 Cir. 2/24/99), 736 So.2d 263; Poole v. Terrell Musgrove Siding & Gutter, 03-139 (La.App. 5 Cir. 6/19/03), 850 So.2d 824; Kaiser v. Western-Southern Ins. Co., 01-1393 (La.App. 5 Cir. 5/15/02), 821 So.2d 52.
[3] Ms. Young was initially treated by Dr. Majors's former associate, Dr. Balter, who sent her for psychiatric evaluation with Dr. Paul Ware. In 1997, Dr. Ware had diagnosed her with moderate chronic depression and felt she was permanently and totally disabled.