CARAWAY, J.
hln this workers’ compensation action, summary judgment was granted against the employer and the insolvent insurer’s successor, Louisiana Insurance Guaranty Association (“LIGA”), in favor of the employee who contested the termination of *1222 his benefits after 19 years of voluntary payments. Defendants claimed that the wage payments made were for supplemental earnings benefits which extend for only 10 years. Penalties and attorney fees were assessed against the employer for wrongful termination of benefits. This appeal ensued. We affirm.

Facts

While employed as a foreman with Steven Garr Logging in September of 1991, David Hollingsworth was injured when a log rolled off of a truck, hitting him in the head. In addition to head trauma, Holl-ingsworth also received injuries to his neck, elbow, legs, heels, back and nose and lost two fingers on his left hand. Voluntary weekly workers’ compensation benefits of $240 were paid to Hollingsworth by his employer until April 12, 2010, when LIGA[1] terminated the benefits. Thereafter on June 24, 2010, Hollingsworth instituted a disputed claim against LIGA and Steven Garr Logging (“Defendants”) seeking reinstatement of total and permanent disability benefits.
On August 12, 2011, Defendants filed a motion for summary judgment on the grounds that Hollingsworth had received the statutory maximum of 520 weeks of supplemental earnings benefits (SEB) and was |2not permanently and totally disabled. Defendants argued that Hollingsworth’s indemnity benefits were converted to SEBs on an unspecified date and that he had produced no evidence to show his permanent and total disability.
Subsequently, Hollingsworth also filed a motion for summary judgment urging recognition of his total and permanent disability and continued weekly benefits. Attached to the summary judgment were Hollingsworth’s affidavit, which included a copy of LIGA’s benefit termination letter, the medical records of neurosurgeon and treating physician, Dr. Russ Greer, and a copy of the report of Dr. Douglas Brown, who conducted an independent medical examination of Hollingsworth on May 9, 2011.
In his affidavit, Hollingsworth attested to the following facts:
He was 61 years old and had never graduated from high school.
As the result of the September 21, 1991 accident, Hollingsworth lost the first two fingers of his left hand, chipped his elbow, displaced leg muscles and suffered injuries to his neck, back, heels and nose.
Hollingsworth continues to suffer from headaches, dizziness and pain in the neck and shoulders. He has balance issues due to dizziness and blackout spells due to the blow to his head. He has pain in his low back, aching in both feet and numbness in both heels. He requires the use of a cane to help in walking.
Hollingsworth has not worked since the accident except that in 2010, after the termination of his benefits, he tried to earn money by mowing yards but was unable to perform the work due to his injuries.
The medical records of Dr. Greer span from September 21, 1991 through November 12, 1996. Immediately after the accident, Hollingsworth was placed in intensive care and diagnosed with head injury with small [^extra-axial blood collection of *1223 the right temporal area and tiny collection in the right parietal area, congenital abnormality of C2-3 fusion, bony irregularity of anterior Cl arch, amputation of his left long finger and small laceration of the left elbow. During his initial hospitalization, Hollingsworth complained of double vision and dizziness. Through the end of 1991 and beginning of 1992, Hollingsworth continued to experience dizziness, stiffness in his neck, some limitation to range of motion of the head and neck and mild tenderness in the cervical region. He began to use a walker for stabilization. It was then that Dr. Greer ordered Hollingsworth not to return to work and concluded that he suffered from “post-traumatic cephalgia and head injury syndrome.” Dr. Greer referred Hollingsworth to Dr. Lawrence Danna[2] for his consideration of “possible post-traumatic vestibular neuronitis.”
By August of 1996, Hollingsworth continued to experience headaches, dizziness and neck and shoulder pain. Specifically he reported the sudden onset of a “pain in the back of the head that goes from the neck up to the back of the head” that caused him to grab his head, as well as “a sensation on the top of the head” that would last a few days. He continued the use of a walking stick for balance. Although Dr. Greer was unsure of the pathology of Hollingsworth’s complaints, he noted the persistence of them since the time of the accident.
|4By September 1996, Hollingsworth’s headaches and dizziness remained unchanged. Tests done on his cervical spine in November of 1996 resulted in the recommendation of cervical surgery including extensive decompressive cervical laminec-tomy and foraminotomies. Hollingsworth refused this treatment.
Orthopedist Dr. Douglas Brown, issued an independent medical examination report addressing Hollingsworth’s condition on May 9, 2011. He referred to the above-noted diagnostic testing of 1996. Dr. Brown concluded that Hollingsworth suffered with herniated C3-4, degenerative C4-5, C5-6, C6-7, probable post-traumatic with foraminal stenosis, postraumatic amputation left second and third fingers, post traumatic vestibular neuronitis with secondary ataxia and imbalance and cervical spondylosis with resulting cervical loss of movement. Dr. Brown assessed Hollings-worth with a 15% whole body impairment due to the vestibular dysfunction with secondary ataxia, 38% whole body impairment due to the multi-level disc herniations and 40% hand impairment and 22% total body impairment from the amputated fingers. Dr. Brown concluded that Hollingsworth was 100% disabled from his logging job and all jobs for which he would be qualified.
In opposition to Hollingsworth’s summary judgment, the Defendants re-urged that Hollingsworth’s evidence was insufficient to establish his entitlement to permanent total disability benefits. After further discovery and an IME of Hollings-worth by Dr. Randolph Taylor, Defendants | ¿supplemented their opposition to Hollingsworth’s motion for summary judgment with Hollingsworth’s deposition and Dr. Taylor’s report.
Defendants contended that in his deposition, Hollingsworth admitted that he had *1224 not received medical treatment since November 12, 1996. Further, they argued that Dr. Brown was not his treating physician, only saw claimant on one occasion and failed to establish that Hollingsworth was permanently and totally disabled under the law. Finally, Defendants urged that Dr. Greer never indicated Hollings-worth’s permanent and total disability. The Defendants also pointed out that the differences in the opinions of Dr. Brown and the January 4, 2012 IME report of Dr. Taylor precluded summary judgment. Therein, Dr. Taylor concluded:
In my opinion, Mr. David Hollingsworth would be unable to return to logging type work. Since he has not been employed for 20 years and has a 9th grade education, he will not return to the work force. (Even if he could be retrained and there were a job available.)
In summary, Mr. David Hollingsworth is 100% disabled but appears to be disabled due to the effects of aging and obesity.
After considering the IME reports of both physicians and hearing the arguments of counsel, the workers’ compensation judge (“WCJ”) granted summary judgment in favor of Hollingsworth reinstating his benefits for total and permanent disability weekly benefits in the amount of $240, and assessed $8,000 penalties and $8,000 attorney fees against Steven Garr Logging due to the failure to fully investigate the termination of benefits. This appeal by Defendants ensued.
| (¶;Discussion
On appeal Defendants argue that the WCJ erred in granting Hollingsworth’s motion for summary judgment and assessing the employer, which was uninvolved in the decision to terminate benefits, with penalties and attorney fees. Specifically, Defendants contend that the evidence submitted in support of and in opposition to the summary judgment failed to establish Hollingsworth’s permanent and total disability. Defendants also argue that because of the dispute in medical evidence, the WCJ erred in not ordering a medical examination of Hollingsworth by an independent physician. Alternatively, Defendants urge that a finding of permanent and total disability was premature until Hollingsworth completes an updated rehabilitation evaluation.
Appellate courts review summary judgments de novo, using the same criteria governing the district court’s consideration of whether summary judgment is appropriate. Moreno v. Entergy Corp., 12-0097 (La.12/4/12), 105 So.3d 40. A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2). The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but |7rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
*1225 In 1991,[3] total permanent benefits were awarded for any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience in an amount of 66¾ percent of wages during the period of such disability. La. R.S. 23:1221(2)(a). Total permanent benefits are awarded if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment. La. R.S. 23:1221(2)(c).
The clear and convincing standard in a workers’ compensation case is an intermediate standard falling somewhere between the ordinary preponderance of the evidence civil standard and the beyond a reasonable doubt criminal standard. Hatcherson v. Diebold, Inc., 00-3263 (La.5/15/01), 784 So.2d 1284; Young v. Physicians & Surgeons Hosp., 39,348 (La.App.2d Cir.3/2/05), 895 So.2d 723. To prove a matter by clear and ^convincing evidence means to demonstrate that the existence of the disputed fact is highly probable or much more probable than its nonexistence. Young, supra.
A judgment of total and permanent disability is not indefinite. Such a finding is always subject to modification as expressly provided in La. R.S. 23:1221(2)(d). Comeaux v. City of Crowley, 01-0032 (La.7/3/01), 793 So.2d 1215; 1 H. Alston Johnson, III, Workers’ Compensation Law and Practice § 275, in 13 Louisiana Civil Law Treatise (5th ed.2010). After a prior judicial determination of benefits, the employer bears the burden of proof in seeking termination or modification of benefits. Snelling Personnel Services v. Duhon, 00-661 (La.App.3d Cir.11/2/00), 772 So.2d 350.
La. R.S. 23:1226(D) also provides:
D. Prior to the hearing officer adjudicating an injured employee to be permanently and totally disabled, the hearing officer shall determine whether there is reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education.
The requirement of La. R.S. 23:1226 must be construed in pari materia with La. R.S. 23:1221(2); Comeaux, supra; Jones v. Walpole Tire Service, Inc., 38,206 (La.App.2d Cir.3/3/04), 867 So.2d 927. Unsuccessful rehabilitation attempts, including the lack of ability to be educated or retrained, along with physical incapacity, are proper factors to consider in determining whether a claimant proved his permanent and total disability. Comeaux, supra; Dennis v. Boh Bros. Const. Co., 39,548 (La.App.2d Cir.4/6/05), 899 So.2d 761, unit denied, 05-1178 (La.11/28/05), 916 So.2d 145.
Regardless of the ultimate nature of the injury, the worker who meets with an acci *1226 dent is usually incapacitated for a time thereafter. During this convalescent period he must be regarded as totally disabled, and he is entitled to compensation accordingly. Johnson, supra, § 285. In this situation, the Act defines temporary total disability benefits (TTD) as any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience. The Act provides for maximum benefits of 66⅜ percent of wages during the period of such disability. La. R.S. 23:1221 (l)(a). TTD cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made, and the employee’s physical condition has improved to the point that continued, regular treatment by a physician is not required, or six months after the injury, whichever first occurs. La. R.S. 23:1221(l)(d).
The Act also provides for SEBs of 66⅜ percent of the difference between the employee’s pre- and post-injury average monthly wages for injury which prevents the employee from earning 90 percent or more of wages at time of injury. La. R.S. 23:1221(3)(a). The right to receive SEBs [inis limited to 520 weeks in La. R.S. 23:1221(3)(d) and this limitation underlies the dispute surrounding the Defendants’ termination of Hollingsworth’s benefits.
The voluntary payment of benefits by an employer does not constitute an admission of liability under La. R.S. 23:1204. Stonetrust Commercial, Ins. Co. v. George, 46,560 (La.App.2d Cir.9/28/11), 81 So.3d 9; Snelling, supra. Although the workers’ compensation law allows an employer or employee to file a claim to resolve disputes, it is not legally necessary that the employer file a 1008 form requesting permission to terminate benefits that are being paid voluntarily. The employer may terminate voluntary payments at will and with impunity, provided the termination is not arbitrary and capricious. Stonetrust, supra; Smiling, supra. The employer that chooses not to terminate benefits through the filing of an 1008 form puts itself at risk of having to pay penalties and attorney fees. If the employer sues to terminate benefits, it does not have the burden of proving that the benefits were not due, even though it is the plaintiff in the litigation. Smiling, supra; Alston, supra, § 285.
An employer may not shift an employee’s indemnity benefits from temporary total disability to supplemental earnings benefits in the absence of an appropriate justification. Key v. Monroe City School Bd., 45,096 (La.App.2d Cir.3/10/10), 32 So.3d 1144; Glover v. General Motors, 38,805 (La.App.2d Cir.8/18/04), 880 So.2d 172. When an employee has suffered a compensable injury under the Act, which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall | ube entitled to prompt rehabilitation services. La. R.S. 23:1226. This requirement has been referred to as a “statutory obligation” of the employer. Frith, supra.
The voluntary payments by Defendants of two-thirds of Hollingsworth’s average wages commenced at the time immediately after the accident when Hollingsworth was completely disabled and unable to work. The evidence also indicates that following *1227 his hospitalization and the passage of time, the extent of Hollingsworth’s recovery could be established by a reasonably reliable determination of the extent of the disability so that under La. R.S. 23:1221(d), his entitlement to wage benefits for TTD ended. Nevertheless, such determination of the disability was not made and shared between the parties at any time during the first five years after the accident as Hollingsworth received medical treatment. Therefore, though Hollingsworth’s temporary total disability may have technically ceased under the law, the parties reached no understanding whether the wage benefits voluntarily paid thereafter were for Hollingsworth’s permanent total disability or merely SEB.
With this situation, we find that the most important inquiry concerning Hollingsworth’s status involves the initial five years of treatment by Drs. Greer and Danna. The reports of their treatment and Hollingsworth’s testimony demonstrate to us that there was clear and convincing evidence to establish that Hollings-worth remained totally disabled from working. He was disabled by the combination of various factors, including the permanent injury to his hand, his cephalgia and head 112injury syndrome, and his spinal injuries. Significantly, Defendants did not produce any evidence of efforts to perform rehabilitation services.[4] With the lengthy passage of time and Defendants’ statutory obligation for rehabilitation services, the record circumstantially indicates that any such rehabilitation efforts to achieve other gainful employment proved unsuccessful. Thus, under guidance of the Comeaux ruling, we find that Hollingsworth met his burden of proof for the establishment of permanent total disability.
With this finding measured by Hollingsworth’s medical and work status in the 1990s after the accident, the Defendants produced no evidence demonstrating a shift of that status whereby Hollings-worth became able again to work. Only then might the voluntary wage benefits be considered as SEBs. With Defendants’ primary argument being the payment and satisfaction of their obligation for SEBs over ten years, they did not establish when Hollingsworth’s permanent total disability ended and the statutory 10-year period began.
The second issue concerns the WCJ’s award of penalties and attorney fees against the employer. LIGA was not assessed for these punitive measures because of its exemption from such measures recognized under the jurisprudence. Defendants assert that LIGA alone implemented its decision to terminate Hollings-worth’s benefits.
11sLa. R.S. 23:1201(1)[5] provides for the payment of both penalties, not to exceed $8,000, and a reasonable attorney fee when the discontinuance of benefits is found to be arbitrary, capricious, or without probable cause. Awards of penalties and attorney fees in workers’ compensation cases are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Although the Workers’ Compensation Act *1228 is to be liberally construed in regard to benefits, penal statutes are to be strictly construed in regard to benefits. Iberia Medical Center v. Ward, 09-2705 (La.11/30/10), 58 So.3d 421. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation. Id.
The Louisiana Supreme Court has determined that LIGA cannot be assessed with penalties and attorney fees for purposes of the workers’ compensation statutes because penalties and attorney fees are not “covered claims” under the Louisiana Insurance Guaranty Law, La. R.S. 22:2051 et seq.,[6] and LIGA is not an “insurer,” for purposes of imposing penalties and attorney fees under the workers’ compensation statutes which limit the imposition of penalties and attorney fees to “any employer and insurer.” Bowens v. General Motors Corp., 608 So.2d 999 (La.1992).
114The ruling in Bowens, supra, excluding LIGA from liability for penalties and attorney fees rested on the following conclusion:
By their clear language, [the penalty provisions of the Act] are applicable only to the employer and his insurer. LIGA is not an insurer, but is, as defined in La. R.S. 22:1379(1), an “association” created under La. R.S. 22:1380.
Id. at 1005 (emphasis in original). With this recognized distinction, we find that the employer remains responsible for timely and reasonable compliance with the obligations of our workers’ compensation law and therefore may be penalized for the termination of payment of wage benefits in this case. The cessation of the payments to Hollingsworth in this case was arbitrary and capricious. The judgment of the WCJ assessing penalties and attorney fees against the employer, Steven Garr Logging, is affirmed.

Conclusion

For the foregoing reasons, the judgment of the WCJ is affirmed. Costs of this appeal are assessed to Defendants.
AFFIRMED.

. LIGA stepped in as successor to the employer's insolvent workers’ compensation insurer presumably under the pre-2008 statutory provisions of La. R.S. 22:1375 et seq.

. Dr. Greer’s medical records give no other information on Dr. Danna's speciality. Those records indicate however, that by December 19, 1991, Hollingsworth had seen Dr. Danna at least twice. The medical records of Dr. Danna were destroyed and unavailable to Defendants who had attempted to obtain them.

. Generally, the law governing an action for workers’ compensation benefits is the law in effect at the time of the injury. Frith v. River-wood, Inc., 04-1086 (La. 1/19/05), 892 So.2d 7.

. In fact, the only mention of rehabilitation in the record is included in Hollingsworth’s affidavit reference to "someone” trying to find jobs for him and Defendants' brief which concedes that Hollingsworth "underwent previous vocational rehabilitation attempts.”

. La. R.S. 23:1201(1) was added in 2003. Pri- or to that time, discontinuance of benefits was addressed in La. R.S. 23:1201.2.

. The current LIGA Law was renumbered from La. R.S. 22:1375 et seq. in the 2008 legislative session. La. R.S. 22:2058 limits LIGA obligations to "covered claims.” La. R.S. 22:2055(6)(b) specifically excludes penalties and attorney fees from the definition of covered claim.